**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGG BOYDEN | : | CIVIL ACTION |
| | : | NO. 18-cv-3283 |
| v. | : | |
| HLS II, LLC | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon consideration of the

Motion of Plaintiff Gregg Boyden for the entry of a default judgment against Garnishees Cross

Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP, and any response

thereto, it is ORDERED that the motion is GRANTED.

Judgment is ENTERED in favor of Plaintiff Gregg Boyden against Garnishees Cross

Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP for the sum of

$112,172.92, plus interest from January 31, 2019 at the legal rate.

BY THE COURT:

_____
J.

## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGG BOYDEN | : | CIVIL ACTION |
| | : | NO.  18-cv-3283 |
| v. | : | |
| HLS II, LLC | : | |
| | : | |

### PLAINTIFF GREGG BOYDEN'S MOTION FOR ENTRY
### OF DEFAULT JUDGMENT AGAINST GARNISHEES CROSS PROPERTIES
### REALTY, LLC, CP ACQUISITIONS 16, LP, AND CP ACQUISITIONS 17, LP

Plaintiff Gregg Boyden ("Boyden"), by and through his counsel, Dean E. Weisgold, P.C., hereby moves this Court for the entry of a Judgment by Default against Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, in the amount of $112,172.96, together with interest at the legal rate of 6% from January 31, 2019.  In support of this request, Boyden relies upon the record in this case and the statement of amount due and Certification of Counsel submitted herewith.

**DEAN E. WEISGOLD, P.C.**

By: _____
Dean E. Weisgold
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone: (215) 979-7602
dean@weisgoldlaw.com

2

## IN THE UNITED STATE DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGG BOYDEN | : CIVIL ACTION |
| | : NO.  18-cv-3283 |
| v. | : |
| HLS II, LLC | : |
| | : |

### CERTIFICATION OF COUNSEL IN SUPPORT OF
### PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

I, Dean E. Weisgold, Esquire, hereby certify as follows:

1.      I am an attorney with the law firm of Dean E. Weisgold, P.C., and in that capacity am fully familiar with the above-captioned matter.

2.      On January 31, 2019, this Court entered judgment in favor of Boyden and against defendant HLS II, LLC in the amount of $112,172.92.  See Exhibit "A", attached hereto.

3.      On September 10, 2019, Boyden filed a Writ of Execution as to Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP ("Garnishees"). See Exhibit "B", attached hereto.

4.      The Garnishees were the sellers of certain real property in Philadelphia located at 3608-12 Spring Garden Street and 4012-30 Baring Street (the "Property") and had entered into an Agreement of Sale with HLS II, LLC, the prospective buyer, in late 2017.  See Agreement of Sale, attached hereto as Exhibit "C".

5.      HLS II, LLC had made an initial good faith deposit of $100,000.00 on December 14, 2017 to Garnishees directly.  Later, an additional deposit of $75,000.00 was paid by HLS, II to First American Title Insurance Company ("First American") in January 2018.

6.      However, the transaction ultimately fell through.

7.     Upon information and belief, the sellers/Garnishees defaulted on their obligations in the Agreement of Sale based on certain issues that arose during the due diligence period. However, Garnishees have refused to refund the good faith deposit of $100,000.00 or to allow the release of the $75,000.00 still held by First American.

8.     First American is awaiting instructions from the Court as to how to disburse the funds. See email from First American dated November 26, 2019, attached hereto as Exhibit "D".

9.     On September 20, 2019, Interrogatories in Attachment were served upon Garnishees. See Interrogatories and Affidavit of Service, attached to the within Certification of Counsel as Exhibits "E" and "F".

10.    To date, there has been no response to the Interrogatories in Attachment on behalf of Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP.

11.    Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court entered a default against Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP on December 14, 2019.

12.    Based on the foregoing and the attached Certification of Counsel, Entry of Default Judgment against Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP for failure to respond to the Interrogatories in Attachment is required by Federal Rule of Civil Procedure 55(b)(2).

13.    Neither Boyden nor the Court have granted Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP an additional extension of time to respond to the Interrogatories in Attachment.

14.   I hereby certify that the foregoing statements are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

WHEREFORE, Plaintiff respectfully requests judgment against Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP in the amount of $112,172.96, plus interest from January 31, 2019 at the rate of six percent (6%).

**DEAN E. WEISGOLD, P.C.**

By: _____
Dean E. Weisgold
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone: (215) 979-7602
dean@weisgoldlaw.com

## CERTIFICATION OF SERVICE

I, Dean E. Weisgold, Esquire, hereby certify that a true and correct copy of the foregoing Motion for Entry of Default Judgment as to Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LP, and CP Acquisitions 17, LP was served upon the following on February 20 , 2020:

Cross Properties Realty, LLC
18 E. Lancaster Avenue
Wynnewood, PA 19096
(Via first class mail and email db@crossprop.com)

CP Acquisitions 16, LP
18 E. Lancaster Avenue
Wynnewood, PA 19096
(Via first class mail and email db@crossprop.com)

CP Acquisitions 17, LP
18 E. Lancaster Avenue
Wynnewood, PA 19096
(Via first class mail and email db@crossprop.com)

HLS II, LLC
31 North Providence Road
Richmond, VA 23235
(Via first class mail and certified mail, return receipt requested)

Steven H. Doto, Esquire
Lauletta Birnbaum, LLC
591 Mantua Boulevard
Suite 200
Sewell, NJ 08080
(Via ECF)

Helen Hayden, VP, Senior Operations Manager
First American Title Co.
1 First American Way
Santa Ana, CA 92707
(Via Email hhayden@firstam.com)

**DEAN E. WEISGOLD, P.C.**

By: _____
Dean E. Weisgold
1835 Market Street, Suite 1215
Philadelphia, Pennsylvania 19103
Phone: (215) 979-7602
dean@weisgoldlaw.com

EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGG BOYDEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HLS II, LLC and ALICE CUMMINGS | : | NO. 18-3283 |

### JUDGMENT

**NOW**, this 31st day of January, 2019, upon consideration of Plaintiff Gregg Boyden's Motion for Entry of Default Judgment Against Defendant HLS II, LLC (Docket No. 17), and after a hearing, it is **ORDERED** that the motion is **GRANTED.**

**IT IS FURTHER ORDERED** that **JUDGMENT IS ENTERED** in favor of the plaintiff Gregg Boyden and against the defendant HLS II, LLC in the amount of $112,172.92, consisting of the principal amount of $100,000.00, interest in the amount of $6,000.00, and attorney's fees and expenses in the amount of $6,172.92.

/s/TIMOTHY J. SAVAGE

A TRUE COPY CERTIFIED FROM THE RECORD
DATED: AUG 21 2019
ATTEST: Steve Tomas
DEPUTY CLERK UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

EXHIBIT "B"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGG BOYDEN

    v.

HLS II, LLC

    and

ALICE CUMMINGS

    :
    :
    :
    :
    :
    :

**CIVIL ACTION**

**NO.**   18-cv-3283

### PRAECIPE FOR WRIT OF EXECUTION

TO THE CLERK:

ISSUE WRIT OF EXECUTION in the above matter, directed to the United States Marshal

for the  Eastern District of Pennsylvania, and against HLS II, LLC

See attached sheet.

and against _____

*(Name and Address of Garnishee)*

garnishee, and index this writ against* _____

_____ and against _____

_____as garnishee, as a lis pendens against real

property of the judgment debtor in the name of the garnishee, as follows:

_____   _____

_____   _____

Amount Due                    $  $112,172.92

Interest from 1/31/19        $  $  2,804.32

_____

Attorney for Plaintiff

Date: ___7/25/19___

*Applicable to real estate only [Rule 3104(c) Pa. R.C.P.].

Civ637 (7/00)

## ATTACHED SHEET

**PROPERTY DESCRIPTION**                **PROPERTY LOCATION**

CP Acquisitions 16, LLC                 18 E. Lancaster Avenue
                                        Wynnewood, PA 19096


CP Acquisitions 17, LLC                 18 E. Lancaster Avenue
                                        Wynnewood, PA 19096


Cross Properties Realty, LLC            18 E. Lancaster Avenue
                                        Wynnewood, PA 19096


First American Title Insurance Company  Two Liberty Place
                                        50 South 16th Street, Suite 2600
                                        Philadelphia, PA 19103

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGG BOYDEN        :      **CIVIL ACTION**
       v.               :
HLS II, LLC           :
     and         :
ALICE CUMMINGS     :     **NO.**     18-cv-3283

### WRIT OF EXECUTION

TO THE UNITED STATES MARSHAL FOR THE EASTERN DISTRICT OF PENNSYLVANIA:
HLS II, LLC

    To satisfy judgment, interest, and costs against _____

_____, defendant
*(Name of Defendant)*

    (1) You are directed to levy upon the property of the defendant and to sell his interest therein:
    (2) You are also directed to attach the property of the defendant not levied upon in the
       possession of ____See attached sheet._____, as garnishee.
                 *(Name of Garnishee)*

_____
                 *(Specifically Describe Property)*

and to notify the garnishee that

       (a) an attachment has been issued;
       (b) the garnishee is enjoined from paying any debt to or for the account of the defendant and
from delivering any property of the defendant or otherwise disposing thereof;
       (3) if property of the defendant not levied upon and subject to attachment is found in the
possession of anyone other than a named garnishee, you are directed to notify him that he has
been added as a garnishee and is enjoined as above stated.

     Amount Due                      $ ___$112,172.92___
     Interest from     ___1/31/19___     $ ___$  2,804.32___
     (Cost to be Added)                 $ _____

                                  KATE BARKMAN
                                  Clerk of Court

*Seal of the Court*                BY: _____
                                   *(Deputy Clerk)*

**MAJOR EXEMPTIONS UNDER PENNSYLVANIA AND FEDERAL LAW**

1. $300 statutory exemption
2. Bibles, school books, sewing machines, uniforms, and equipment
3. Most wages and unemployment compensation
4. Social Security benefits
5. Certain retirement funds and accounts
6. Certain veteran and armed forces benefits
7. Certain insurance proceeds
8. Such other exemptions as may be provided by law

Civ 638 (7/00)

**ATTACHED SHEET**

| PROPERTY DESCRIPTION | PROPERTY LOCATION |
|---|---|
| CP Acquisitions 16, LLC | 18 E. Lancaster Avenue<br>Wynnewood, PA 19096 |
| CP Acquisitions 17, LLC | 18 E. Lancaster Avenue<br>Wynnewood, PA 19096 |
| Cross Properties Realty, LLC | 18 E. Lancaster Avenue<br>Wynnewood, PA 19096 |
| First American Title Insurance Company | Two Liberty Place<br>50 South 16th Street, Suite 2600<br>Philadelphia, PA 19103 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGG BOYDEN            :             **CIVIL ACTION**
          v.                 :
HLS II, LLC                :
        and              :
ALICE CUMMINGS        :
                          :          NO. 18-cv-3283

## WRIT OF EXECUTION
## NOTICE

This paper is a Writ of Execution. It has been issued because there is a judgment against you. It may cause your property to be held or taken to pay the judgment. You may have legal rights to prevent your property from being taken. A lawyer can advise you more specifically of these rights. If you wish to exercise your rights, you must act promptly.

The law provides that certain property cannot be taken. Such property is said to be exempt. There is a debtor's exemption of $300. There are other exemptions which may be applicable to you. Attached is a summary of some of the major exemptions. You may have other exemptions or rights.

If you have an exemption, you should do the following promptly: (1) Fill out the attached claim form and demand for a prompt hearing. (2) Deliver the form or mail it to the United States Marshal's office at the address noted.

You should come to court ready to explain your exemption. If you do not come to court and prove your exemption, you may lose some of your property.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

## LAWYER REFERENCE SERVICE
*(Name)*

**ONE READING CENTER
11TH FLOOR
PHILADELPHIA, PA 19107**
*(Address)*

**(215) 238-1701**
*(Telephone Number)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | **CIVIL ACTION** |
| | : | |
| GREGG BOYDEN | : | |
| v. | : | |
| HLS II, LLC | : | |
| and | : | **NO.** 08-cv-3283 |
| ALICE CUMMINGS | : | |

### CLAIM FOR EXEMPTION

To the U.S. Marshal:

I, the above named defendant, claim exemption of property from levy or attachment:

(1) From my personal property in my possession which has been levied upon.

    (a) I desire that my $300 statutory exemption be

        (i) set aside in kind (specify property to be set aside in kind):

_____

        (ii)  paid in cash following the sale of the property levied upon; or

    (b) I claim the following exemption (specify property and basis of exemption):

_____

(2) From my property which is in the possession of a third party, I claim the following exemptions:

    (a) My $300 statutory exemption:      in cash      in kind (specify property): _____

    (b) Social security benefits on deposit in the amount of $ _____

    (c) Other (specify amount and basis of exemption): _____

_____

I request a prompt court hearing to determine the exemption. Notice of the hearing should be given to me at _____

_____      _____
      *(Address)*                            *(Telephone Number)*

I declare under penalty of perjury that the foregoing statements made in this claim for exemption are true and correct.

Date: _____          _____
                                                        *(Signature of Defendant)*

**THIS CLAIM TO BE FILED WITH THE OFFICE OF THE U.S. MARSHAL FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2110 United States Courthouse
601 Market Street
Philadelphia, PA 19106**
_____
*(Address)*

**(215) 597-7272**
_____
*(Telephone Number)*

*Note:* Under paragraphs (1) and (2) of the writ, a description of specific property to be levied upon or attached may be set forth in the writ or included in a separate direction to the United States Marshal.

Under paragraph (2) of the writ, if the attachment of a named garnishee is desired, his name should be set forth in the space provided.

Under paragraph (3) of the writ, the United States Marshal may, as under prior practice, add as a garnishee any person not named in this writ who may be found in possession of property of the defendant. See Rule 3111(a). For limitations on the power to attach tangible personal property, see Rule 3108 (a).

Each court shall by local rule designate the officer, organization, or person to be named in the notice.

Civ 640 (7/00)

EXHIBIT "C"

## REAL ESTATE PURCHASE AND SALE AGREEMENT IMPROVED PROPERTY

This Real Estate Purchase and Sale Agreement (the "***Contract***") is made by and between **CP ACQUISITIONS 16 LLC**, a Pennsylvania limited liability company ("***CP 16***") and **CP ACQUISITIONS 17 LLC**, a Pennsylvania limited liability company ("***CP 17***" and together with CP 16, collectively, "***Seller***"), and **HLSII, LLC**, a Virginia limited liability company ("***Buyer***"), as of the Effective Date (as defined in Section 15.8).

## RECITALS

WHEREAS, CP 16 is the owner of the project commonly known as "The Legacy at Powelton Village" consisting of (i) that certain parcel of land with the apartment building and improvements thereon located at 3608-12 Spring Garden Street, Philadelphia, Pennsylvania and (ii) that certain parcel of land with the apartment building and improvements thereon located commonly known as 4027 Baring Street, Philadelphia, Pennsylvania (collectively, the "***CP 16 Property***"); and

WHEREAS, CP 17 is the owner of that certain parcel of land with the apartment building and improvements thereon located commonly known as "Good Foods Flats" and located at 4012-30 Baring Street, Philadelphia, Pennsylvania (the "***CP 17 Property***"); and

WHEREAS, Buyer intends to purchase from Seller, and Seller intends to sell to Buyer, the CP 16 Property and the CP 17 Property, upon the terms and conditions set forth herein.

NOW THEREFORE, Seller and Buyer, in consideration of the covenants and agreements herein contained, and for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, hereby agree as follows:

## ARTICLE I
## PURCHASE AND SALE

1.1     **Sale of Property**. Upon the terms and conditions hereinafter set forth, Seller agrees to sell and convey to Buyer, and Buyer agrees to buy from Seller, the following (collectively referred to as the "***Property***"):

(a)     Fee simple title in the CP 16 Property and the CP 17 Property, as more particularly described on **Exhibit A** attached hereto, together with all rights and appurtenances, pertaining to such real property, including, without limitation, any interest of Seller in any alleys, strips or gores of land, if any, adjoining said real property and abutting properties, whether owned or claimed by deed, limitations or otherwise, and whether or not located inside or outside the real property, all rights, titles and interests of Seller in and to any easements, rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road or avenue, open or proposed, in, on, across, in front of, abutting or adjoining, said real property, and all benefits, privileges, tenements, hereditaments, rights and appurtenances thereon or pertaining to such real property (collectively the "***Land***");

(b)     All Seller's interest in all improvements, structures and fixtures placed, constructed, or installed on the Land, including without limitation, the apartment complex

1

119842729_4



PLAINTIFF'S EXHIBIT 3

located thereon and all associated amenities and parking and common areas (collectively, the "***Improvements***");

(c)     All Seller's interest in the fixtures, equipment and personal property owned by Seller comprising part of the Land or Improvements and/or located in or on the Land or Improvements, including, but not limited to the following: (i) mechanical systems, fixtures and equipment, along with electrical systems, plumbing systems, heating systems, air conditioning systems and other systems and fixtures; (ii) carpets, drapes, blinds, and other furnishings; (iii) appliances (including without limitation, refrigerators, ovens, stoves, microwaves, freezers and dishwashers); (iv) maintenance equipment, supplies and tools; and (v) other machinery, equipment, fixtures, supplies owned by Seller and located in or on the Land or Improvements (collectively, the "***Personal Property***"); however the Personal Property shall not include the office computers used by the property manager, assistant manager and leasing agent, which will be retained by Seller nor any personal property of any tenants;

(d)     All site plans, surveys, soil and substrata studies, architectural drawings, plans and specifications, engineering plans and studies, floor plans, landscape plans and other plans and studies of any kind in Seller's possession that relate to the Land, the Improvements or the Personal Property;

(e)     All Seller's interest as landlord in all leases and licenses and other rental or occupancy agreements with tenants occupying space situated in the Improvements or on the Land, as identified on the rent rolls attached hereto as **Schedule 1.1(e)** (collectively, the "***Leases***"), and all unapplied or unused security deposits, pet deposit, pet fees and similar deposits and fees, if any, paid by tenants or occupants in connection with such Leases (collectively, the "***Security Deposits***");

(f)     All Seller's interest, to the extent to be assumed pursuant to Section 1.2 in all (i) brokerage or tenant locator contracts, (ii) maintenance, repair, service, and pest control contracts (including but not limited to janitorial and landscaping agreements), and (iii) all other agreements pursuant to which services (other than property management services) or goods are provided to the Land or Improvements (collectively, the "***Service Contracts***"), all of which are listed on **Schedule 1.1(f)** attached hereto;

(g)     All Seller's interest, in all furniture, fixture, and equipment leases covering furniture, fixtures and equipment located in or on or used in connection with the Land or Improvements (the "***Personal Leases***"), all of which are listed on **Schedule 1.1(g)** attached hereto;

(h)     All promotional material, market studies, tenant data, rental material, and forms, keys and other materials of any kind in Seller's possession used in the continuing operation of the Property; and

(i)     All Seller's interest, in all intangible property relating to the Property, including, without limitation: (i) warranties and guaranties relating to the Land, Improvements, or Personal Property, to the extent effective and assignable; (ii) site plans, surveys, plans and specifications, brochures and floor plans of the Land and Improvements; (iii) rights under transferable business licenses, governmental permits or approvals; and (iv) the names "Good Food Flats" and "The Legacy at Powelton Village" and logos, trade-marks, service marks, trade names, website, telephone exchange numbers, domain names, operating materials, photographic

2

materials depicting the Property and good will associated with the operation and management of the Property (collectively, the "*Intangible Property*").

    1.2    **Approval of Service Contracts and Personal Leases**. On or before the expiration of the Inspection Period (as hereinafter defined), Buyer shall deliver written notice to Seller (the "*Property Contracts Notice*") specifying any Service Contracts and Personal Leases (collectively the "*Property Contract(s)*", but excluding utilities) which Seller shall terminate as of the Closing Date (the "*Terminated Contracts*") and which Property Contracts Seller shall assign and Buyer shall assume (to the extent the same are assignable) at Closing; provided that to the extent that any such Terminated Contract requires payment of a penalty or premium for cancellation, Buyer shall be solely responsible for the payment of any such cancellation fees or penalties. If Buyer fails to deliver the Property Contracts Notice on or before the expiration of the Inspection Period, there shall be no Terminated Contracts and Buyer shall assume all Property Contracts at the Closing. To the extent that any Property Contract to be assumed by Buyer (including any Property Contract that, because of advance notice requirements, will be temporarily assumed by Buyer pending the effective date of termination after the Closing Date) is assignable but requires the applicable vendor to consent to the assignment of the Property Contract by Seller and the assumption of the Property Contract by Buyer, then, prior to the Closing, Buyer shall be responsible for requesting from each applicable vendor a consent (each a "*Required Assignment Consent*") to the assignment of the Property Contract by Seller to Buyer (and the assumption by Buyer of all obligations under such Property Contract).

## ARTICLE II
## SALES PRICE AND FINANCING

    2.1    **Amount of Sales Price**. The sales price for the Property (the "*Sales Price*") to be paid by Buyer to Seller is Twenty-Eight Million and 00/100 Dollars ($28,000,000.00).

    2.2    **Payment of Sales Price**. The Sales Price shall be paid at the Closing and must be paid in the form of cash or transfer of immediately available cash funds in the amount equal to the Sales Price, subject to adjustments and prorations as provided in this Contract.

## ARTICLE III
## EARNEST MONEY

    3.1    **Deposit**.

        (a)    On or before 5:00 p.m. Eastern standard time on December 8, 2017, Buyer shall deposit One Hundred Thousand and 00/100 Dollars ($100,000.00) (the "*Initial Deposit*") with First American Title Insurance Company (sometimes referred to as the "*Escrow Agent*" and sometimes referred to as the "*Title Company*"). If Buyer fails to timely deposit the Initial Deposit with the Title Company, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this Contract by written notice to Buyer at any time before the Initial Deposit is delivered to the Title Company, in which event, neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract. If Buyer delivers the Initial Deposit to the Title Company before Buyer's receipt of Seller's termination notice, Buyer shall be deemed to have timely delivered the Initial Deposit and Seller shall not thereafter be entitled to terminate the Contract as a result of any delay in delivering the Initial Deposit.

3

(b)     Provided that this Contract has not been terminated, within one (1) Business Day following the expiration of the Inspection Period, Buyer shall deposit an additional One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) (the "***Additional Deposit***") with the Title Company. If Buyer fails to timely deposit the Additional Deposit with the Title Company, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this Contract by written notice to Buyer at any time before the Additional Deposit is delivered to the Title Company, in which event, the Initial Deposit shall be released to Seller, and neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract. If Buyer delivers the Additional Deposit to the Title Company before Buyer's receipt of Seller's termination notice, Buyer shall be deemed to have timely delivered the Additional Deposit and Seller shall not thereafter be entitled to terminate the Contract as a result of any delay in delivering the Additional Deposit.

(c)     The Initial Deposit, the Additional Deposit and the Extension Deposits (as hereinafter defined), together with interest thereon, if any, are referred to herein collectively as the "***Deposit***".

3.2     **Application of the Deposit**. The parties agree that the Deposit shall be deposited by the Escrow Agent in an interest-bearing account at an institution acceptable to Seller and Buyer. All interest accruing on the Deposit shall become a part of the Deposit and shall be distributed in accordance with the terms of this Agreement. In the event of a termination of this Contract by either Seller or Buyer for any reason expressly permitted hereunder, Escrow Agent is authorized to deliver the Deposit to the party hereto entitled to same pursuant to the terms hereof on (but not prior to, nor later than) the fifth (5th) Business Day following receipt by Escrow Agent and the non-terminating party of written notice of such termination from the terminating party, unless the other party hereto notifies Escrow Agent, prior to the fifth (5th) Business Day following its receipt of such notice, that it disputes in good faith the right of the other party to receive the Deposit. In such event, Escrow Agent may interplead the Deposit into a court of competent jurisdiction in Philadelphia, Pennsylvania or hold such Deposit until receipt of joint written instructions from Buyer and Seller. All reasonable attorneys' fees and costs and Escrow Agent's third-party costs and expenses actually incurred in connection with such interpleader shall be assessed against the party that is not awarded the Deposit, or if the Deposit is distributed in part to both parties, then in the inverse proportion of such distribution.

The Deposit is nonrefundable to Buyer and will be refundable only in the event that the Seller fails to close under the Agreement due to (i) a default by the Seller; (ii) the Seller's inability to deliver title as required by the Agreement, or (iii) in the event of a condemnation or casualty to the Property that permits Buyer to terminate the Agreement (such events, the **"Refundable Conditions"**). As used in this Contract, "nonrefundable to Buyer" shall mean that Seller is entitled to retain the Deposit or applicable portion thereof if the transaction contemplated herein does not Close.   Seller's inadvertent failure to deliver Due Diligence Information (as defined below) is not a default and is not grounds for the return of the Deposit to Buyer. The Deposit, if not forfeited as provided herein, shall be applied to the Sales Price at Closing.

**ARTICLE IV**
**INSPECTION PERIOD**

4

4.1     **Property Condition Investigation**. Buyer shall have thirty (30) days following the Effective Date (the "***Inspection Period***") to inspect and investigate the Property and operation and management thereof and to determine whether the Property is suitable for Buyer's needs in Buyer's sole and absolute and unfettered discretion. Buyer's receipt of the Due Diligence Information shall be determined by actual receipt of the Title Binder by Buyer from the Title Company and Buyer's confirmation to Seller that the remainder of the Due Diligence Information has been uploaded by Seller to a Dropbox folder or similar electronic file storage portal accessible to Buyer (the "***Dropbox***") and that Buyer is able to access the Dropbox; provided that Buyer shall attempt to access  the Dropbox within twenty-four (24) hours of Seller's notification to Buyer that the Due Diligence Materials have been uploaded to the Dropbox, and Buyer shall promptly review the Due Diligence Information to ascertain that all Due Diligence Information has been uploaded and is accessible to Buyer, and if all Due Diligence Information has been uploaded and is accessible to Buyer, Buyer shall promptly notify Seller of receipt of the Due Diligence Information. Buyer may elect, in its sole, absolute and unfettered discretion, for any reason or no reason to terminate this Contract on or before 5:00 p.m. on the last day of the Inspection Period by giving written notice to Seller, as provided herein. Upon Seller's and Escrow Agent's receipt of such notice, the Escrow Agent shall deliver the Deposit to Seller, and neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract. If Buyer does not terminate this Contract on or before the expiration of the Inspection Period, it shall be deemed not to have elected to terminate this Contract pursuant to this <u>Section 4.1</u>, and Buyer shall pay the Additional Deposit as provided in <u>Section 3.1(b)</u>.

4.2     <u>Access</u>. Buyer and Buyer's members, employees, consultants, lenders, contractors and agents (collectively "***Buyer Parties***") shall have the right, during "***Normal Business Hours***" (8:00 am to 5:00 pm on Business Days, as defined in <u>Section 15.5</u>), subject to the rights of tenants in possession, to inspect the physical condition of the Property and make such engineering, environmental and other studies of the Property as Buyer may elect, subject to the limitations imposed by this Contract. Seller shall provide the Buyer and Buyer Parties with access individual apartment units to the extent permitted by the applicable lease. In connection with any entry by Buyer or Buyer Parties onto the Property, or any inspection of the Property by Buyer or Buyer Parties, Buyer shall give Seller at least one (1) Business Day advance notice of such entry or inspection and shall conduct such entries and inspections so as to minimize, to the extent reasonably possible, interference with Seller's business and the occupancy of the tenants. Prior to any entry to perform any on-site testing or inspection of structural, environmental, subsoil or engineering conditions of the Property, Buyer shall give Seller two (2) Business Days prior written notice thereof, including the identity of the party who will perform such testing or inspections and the proposed scope thereof. Seller or its representative may, at Seller's option, be present to observe any testing or other inspection performed on the Property, and any other entry onto the Property, by Buyer or Buyer Parties.

4.3     **Terms of Access**. In conducting any inspections, investigations or tests of the Property, Buyer and Buyer Parties: (a) will not: (1) make any intrusive physical testing (environmental, structural or otherwise, other than a Phase I environmental inspection which is hereby expressly permitted) at the Land or Improvements (such as soil borings, water samplings or the like), without the prior written consent of Seller, which consent shall not be unreasonably withheld, conditioned or delayed, (2) contact any tenant of the Land or Improvements or unreasonably disturb or interfere with any tenants use of the Land or Improvements pursuant to

5

their respective leases, (3) unreasonably interfere with the operation and maintenance of the Property, (4) meet with any employees of the Seller or Seller's property management company without the on-site property manager present, (however Seller will make the on-site property manager available for such meetings and conversations during Normal Business Hours and subject to the notice requirements of this Article IV), (5) damage any part of the Property or any personal property owned or held by any tenant or any third party, (6) injure or otherwise cause bodily harm to Seller and/or any agent, advisor, representative, affiliate, employee, director, partner, member, beneficiary, investor, lender, servant shareholder, trustee or other person or entity acting on Seller's behalf or otherwise related or affiliated with Seller ("*Seller Parties*") or any tenants or their guests or invitees, and (7) permit any liens to attach to the Property by reason of the exercise of its rights hereunder; and (b) will (1) comply with all applicable laws, (2) promptly pay when due the costs of all tests, investigations, and examinations done with regard to the Property, (3) promptly repair any damage to the Property and restore any areas disturbed resulting directly or indirectly from any such inspection, tests, investigations or studies substantially to their condition prior to the performance of such tests or studies, (4) maintain or cause to be maintained, at Buyer's expense, a policy of commercial general liability insurance, with a broad form contractual liability endorsement and with a combined single limit of not less than $1,000,000.00 per occurrence for bodily injury and property damage, and an excess umbrella liability policy for bodily injury and property damage in the amount of $2,000,000.00, insuring Buyer and Seller and Seller Parties as additional insureds, against any injuries or damages to persons or property that may result from or are related to (i) Buyer's and/or Buyer Parties entry upon the Property, (ii) any investigations or other activities conducted on the Property and/or (iii) any and all other activities undertaken by Buyer and/or Buyer Parties (the "*Buyer Insurance*"), and (5) deliver a copy of the insurance policy for the Buyer Insurance to Seller prior to the entry on the Property by Buyer or Buyer Parties. The Buyer Insurance will be on an "occurrence form". Further, Buyer agrees, solely at Buyer's expense, to restore the Property to the condition existing prior to Buyer's inspections, investigations or tests; provided, however, that Buyer shall not be responsible for any damage or destruction to the Property from any intervening cause or preexisting condition other than Buyer's inspections, investigations or tests. The terms of this Section 4.3 shall survive Closing or termination of this Contract.

4.4    **Indemnity**. **EXCEPT FOR MATTERS ARISING OUT OF THE NEGLIGENCE OR WILLFUL MISCONDUCT OF SELLER OR ANY SELLER PARTIES, BUYER FURTHER AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS SELLER AND SELLER PARTIES FROM ANY AND ALL DAMAGES, LOSSES, CLAIMS, CAUSES OF ACTION, COSTS AND/OR EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEY FEES) INCURRED BY OR ASSERTED AGAINST SELLER AND ARISING OUT OF: (a) PERSONAL INJURIES, WRONGFUL DEATH OR PHYSICAL DAMAGE TO PROPERTY CAUSED BY BUYER OR BUYER PARTIES WHILE EXERCISING BUYER'S RIGHTS GRANTED IN ARTICLE IV; (b) ANY AND ALL MECHANIC'S LIENS FOR WORK PERFORMED BY OR ON BEHALF OF BUYER OR BUYER PARTIES; AND/OR (c) ANY INVESTIGATIONS BY BUYER OR BUYER PARTIES OR ACTIVITIES UNDERTAKEN BY BUYER OR BUYER PARTIES WITH RESPECT TO THE PROPERTY. THE TERMS OF THIS SECTION 4.4 SHALL SURVIVE CLOSING OR TERMINATION OF THIS CONTRACT. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NEITHER BUYER NOR ANY BUYER PARTIES**

6

**SHALL BE LIABLE FOR ANY CLAIMS OR OCCURRENCE TO THE EXTENT ARISING OUT OF ANY CONDITION WHICH EXISTED AT THE PROPERTY PRIOR TO BUYER'S INSPECTION OR ENTRY.**

4.5 **Preexisting Condition.** In the event Buyer discovers a preexisting condition at the Property, Buyer hereby covenants that it shall not disclose such condition to any person, except the Buyer Parties and Seller Parties, unless required to disclose the discovery of such existing conditions to a governmental authority pursuant to applicable law. The terms of this Section 4.5 shall survive Closing or termination of this Contract.

## ARTICLE V
## SURVEY, TITLE BINDER AND OTHER DOCUMENTS

5.1 **Survey.** Seller shall deliver or cause to be delivered to Buyer a copy of Seller's most recent existing survey of the Land (the "***Existing Survey***") together with the Due Diligence Information (as defined in Section 5.6 below). Buyer may, at Buyer's sole cost and expense, have such new survey recertified to Buyer or updated in a form acceptable to Buyer (the "***New Survey***") and Seller will authorize the surveyor of the Existing Survey to work with Buyer to accomplish the same, at no cost to Seller. Seller agrees to execute a quitclaim deed to Buyer for the legal description contained in the New Survey at Closing, but will only warrant to the legal description contained in Seller's vesting deed. The Existing Survey and New Survey will collectively be referred to as the "***Survey***".

5.2 **Title Binder.** Within one (1) Business Day of the Effective Date, Buyer shall, at Buyer's expense, order a title insurance commitment covering the Land from the Title Company (the "***Title Binder***"), binding the Title Company to issue a Pennsylvania Owner's Policy of Title Insurance (the "***Title Policy***") in the full amount of the Sales Price. The Title Binder will include full size, legible copies of all documents referenced in the exceptions listed on Schedule B of the Title Binder.

5.3 **Buyer's Approval of Title, Survey and Third-Party Reports.** Within ten (10) Business Days after receipt of the Title Binder, but in no event later than five (5) Business Days before the last day of the Inspection Period, Buyer shall deliver in writing to Seller any objections Buyer may have to anything contained in the Title Binder or the Survey (the "***Title Objection Notice***"). Within five (5) days after receipt of the Title Objection Notice, Seller shall notify Buyer in writing whether Seller shall clear the title of the defects and objections so specified or demonstrate to Buyer's reasonable satisfaction Seller's ability to clear such matters as of the date of Closing, or that Seller elects not to do so. In the event Seller either elects not to cure or fails to provide notice to Buyer within the time permitted of its intent to attempt to cure, Buyer shall have the right to: (i) terminate this Contract by written notice to Seller, in which event Buyer shall receive a refund of the Deposit and neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract; or (ii) proceed to Closing hereunder. All title exceptions which are identified on **Schedule 5.3** and any other title exceptions that are approved or deemed approved by Buyer shall constitute "***Permitted Exceptions***" for purposes hereof. In the event that at any time following delivery of the Title Binder, exception documents or Survey described above, but prior to Closing, any changes (other than the deletion or elimination of any item as to which Buyer has made an objection) shall occur in the Title Binder, exception documents or Survey (collectively, any "***New Matters***"), Buyer shall have the right to review and approve or disapprove of any such

7

New Matters and to provide written notice to Seller of any disapproval of any such New Matters within five (5) Business Days of Buyer's receipt thereof and the Closing shall be extended, if necessary, to provide for such five (5) Business Days. Seller may elect, at Seller's sole discretion, to attempt to cure any such disapproved New Matter prior to Closing in a manner reasonably acceptable to Buyer and, in the event Seller so elects then Seller shall provide written notice to Buyer of such election within five (5) Business Days of receipt of Buyer's disapproval notice of any New Matter. In the event Seller either elects not to cure or fails to provide notice to Buyer within the time permitted of its intent to attempt to cure, then in such event Buyer may terminate this Contract and obtain a refund of the Deposit and neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract. Notwithstanding any of the foregoing, Seller shall be required to remove any mortgage liens, tax liens, mechanics' liens, assessments or other amounts that may be removed of record by payment of a sum certain, and any exceptions or encumbrances to title and/or survey matters which are voluntarily created by, under or through the acts or omissions of Seller from and after the Effective Date without Buyer's express written consent ("***Monetary Liens***") and none of such items shall be deemed to be Permitted Exceptions whether or not Buyer objects thereto. If Seller fails to cure or remove any exceptions required hereunder (including the Monetary Liens, non-Permitted Exceptions, any matter Seller has undertaken to cure or any lien or exception voluntarily created by Seller from and after the Effective Date) Buyer shall have the right to (a) terminate this Contract and receive a return of the Deposit and neither party shall have any further rights or liabilities hereunder except for those provisions which expressly survive termination of this Contract, or (b) receive a credit against the Sales Price in the amount required for Buyer to remove or cure the same, as reasonably estimated by Buyer, if such amount is not otherwise identified.

5.4     **Broker's Notice to Buyer**. At the time of the execution hereof, the Broker, if any, has advised, and hereby advises Buyer by this writing, that Buyer should have an abstract covering the Property examined by an attorney of Buyer's own selection or should be furnished with or obtain a policy of title insurance, and Buyer acknowledges that Buyer has been so advised.

5.5     **No Further Encumbrances**. Seller shall not record, cause to be recorded or permit to be recorded any liens, encumbrances or other items against or affecting the title of the Property from and after the Effective Date.

5.6     **Documents Previously Delivered or to be Delivered by Seller**. If and only to the extent such items are in Seller's possession, Seller shall deliver or make available to Buyer for review at the Property, the following documents no later than one (1) Business Days after the Effective Date:

(a)     Lease Information: (i) copies of the Leases (including any amendments and guaranties); (ii) lease expiration schedule; standard lease form including addenda; (iii) current rent roll (to be updated monthly); and (iv) list of all the security and other deposits;

(b)     Permits and Plans: (i) copies of all certificates of occupancy and (ii) building plans;

(c)     Service Contracts: copies of all Service Contracts currently in effect;

8

     (d)    Copies of current monthly utility bills (electricity, water, sewer, septic, gas, fuel oil, telephone/security lines) for the past 3 months;

     (e)    Management Agreement (if any).

     (f)    Seller's existing title policy or title commitment;

     (g)    The Existing Survey

The information called for in this Section 5.6 is collectively the "***Due Diligence Information***". Seller makes no representations or warranties as to the truth, accuracy or completeness of any Due Diligence Information delivered by its brokers to Buyer in connection with the transaction contemplated hereby. Neither Seller nor any affiliate, agent or attorney of Seller, nor the person or entity which prepared any report or reports delivered by or on behalf of Seller to Buyer, shall have any liability to Buyer for any inaccuracy in or omission from any such Due Diligence Information.

5.7    **Excluded Information**. In no event shall Seller be obligated to make available the following items: (a) any document or correspondence which would be subject to the attorney-client privilege except for litigation files associated with claims against the Property or the management thereof; (b) marketing materials with respect to the sale of the Property to prospective buyers; and (c) any internal memoranda, reports or assessments of Seller or Seller's affiliates relating to Seller's valuation of the Property. The terms of this Section 5.7 shall survive Closing or termination of this Contract.

5.8    **Confidentiality**. As used in this Contract, the term "***Information***" shall mean all documents in any way relating to the Property, the operation thereof or the sale thereof, including, without limitation, materials ordered or produced by Buyer or Buyer Parties in relation to the Property along with all leases, contracts, and Due Diligence Information furnished to, or otherwise made available for review by, Buyer or Buyer Parties by Seller or any Seller Parties, and any information obtained during the Investigation Period concerning the Property and the Due Diligence Information. Buyer and Seller, and by execution hereof the brokers representing such parties, agrees that neither it nor any Buyer or Seller Parties, as applicable, shall, at any time or in any manner, either directly or indirectly, divulge, disclose or communicate to any person, entity or association the Information or any other knowledge concerning the Property, including the Sales Price, disclosed by the party disclosing such Information (the "***Disclosing Party***") to the other party (the "***Receiving Party***"), other than matters that were in the public domain at the time of receipt by such part or which the Receiving Party has received written consent to disclose from the Disclosing Party. Without the prior written consent of the Disclosing Party, Seller and Buyer shall each not disclose, and shall each direct its partners, investors, third-party providers, contractors, attorneys, accountants, employees, agents and representatives not to disclose to any person, entity or association of any of the terms, conditions or other facts with respect to this Contract, including, without limitation, the status of the Contract. Notwithstanding the foregoing, Buyer and Seller may disclose the Information and its other reports, studies, documents and other matters generated by Buyer or Buyer Parties, or provided to it by Seller or Seller Parties including the terms of this Contract (i) as required by law or court order (provided prior written notice of such disclosure shall be provided to the other party) and (ii) as Buyer or Seller deems necessary or desirable to Buyer Parties and Seller Parties, respectively, in connection with the transaction contemplated hereby,

9

provided that those to whom such Information is disclosed are informed of the confidential nature thereof and agree in writing to keep the Information confidential. The Information is being made available to Buyer as an accommodation and to be used for the sole purpose of allowing Buyer the opportunity to evaluate the transaction contemplated by this Contract and no other purpose. Buyer and Buyer Parties agree not to use the Information for any purpose beyond the evaluation called for in this Contract. **THE RECEIVING PARTY AGREES TO INDEMNIFY AND HOLD HARMLESS THE DISCLOSING PARTY OR PARTIES FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND DISBURSEMENTS) SUFFERED OR INCURRED BY THE DISCLOSING PARTY OR PARTIES AND ARISING OUT OF OR IN CONNECTION WITH A BREACH BY THE RECEIVING PARTY OR PARTIES OF THE PROVISIONS OF THIS SECTION.** In addition to any other remedies available to Disclosing Party, the Disclosing Party shall have the right to seek equitable relief, including, without limitation, injunctive relief or specific performance, against the Receiving Party or parties in order to enforce the provisions of this Section. Notwithstanding any terms or conditions in this Contract to the contrary, no conditions of confidentiality within the meaning of IRC §6111(d) or the Treasury Regulations promulgated under IRC Sec. 6011 are intended, and the parties hereto are expressly authorized to disclose every U.S. federal income tax aspect of any transaction covered by this Contract with any and all persons, without limitation of any kind. The terms of this <u>Section 5.8</u> shall survive Closing or termination of this Contract.

     5.9    **Return of Information**. In the event this Contract is terminated for any reason, Buyer and Buyer Parties shall promptly upon written request deliver to Seller all originals and copies of Seller-provided Due Diligence Information in the possession of Buyer and Buyer Parties, and copies of any third-party reports or studies that Buyer has obtained during its investigation of the Property except for those third-party reports prepared for and paid for by Buyer or Buyer Parties. Buyer shall deliver to Seller copies of all of the foregoing within five (5) days after the termination of this Contract or shall certify in writing that all such materials have been destroyed. The terms of this <u>Section 5.9</u> shall survive Closing or termination of this Contract.

**ARTICLE VI**
**CLOSING**

     6.1    **Closing Date**. The date for the closing of the sale (the "***Closing Date***" and, sometimes referred to herein as the "***Closing***") shall be thirty (30) days following the expiration or satisfaction of the Inspection Period, subject to extension as hereinafter provided. The Closing shall take place at the offices of the Title Company unless otherwise agreed by Seller and Buyer. Notwithstanding the forgoing, Seller and Buyer agree that the Closing can be accomplished by the parties' delivery of closing documents to the Title Company via mail or other delivery method acceptable to the Title Company and that neither party is required to be physically present at the Title Company for the Closing to occur. Provided that Buyer is not in default under this Contract, Buyer may elect to extend the Closing for up to two (2) additional periods of fifteen (15) days each, upon written notice to Seller received at least ten (10) days prior to the then existing Closing date, and payment by Buyer to Seller of a non-refundable payment of

10

$25,000 for each such extension (each, an "**_Extension Deposit_**"). The Extension Deposit(s) shall be non-refundable to Buyer, but in the event that Closing occurs, shall be credited against the Sales Price.

    6.2    **Seller's Obligations**. At the Closing, Seller shall deliver in escrow to the Title Company in accordance with this Contract, duly executed and, where applicable, acknowledged at Seller's sole cost and expense:

    (a)    A duly executed and acknowledged Special Warranty Deed for the CP 16 Property and for the CP 17 Property in the form of **Exhibit B-1** and **Exhibit B-2**, respectively, attached hereto (collectively, the "**_Deed_**");

    (b)    A duly executed Bill of Sale and Assignment for the CP 16 Property and for the CP 17 Property in the form of **Exhibit C-1** and **Exhibit C-2**, respectively, attached hereto (collectively, the "**_Bill of Sale and Assignment_**") conveying Seller's interest in all Personal Property, Intangible Property, and Property Contracts;

    (c)    A duly executed Assignment and Assumption of Leases for the CP 16 Property and for the CP 17 Property in the form of **Exhibit D-1** and **Exhibit D-2**, respectively, attached hereto (collectively, the "**_Assignment of Leases_**") covering the Leases and all prepaid rents, refundable security deposits, refundable pet deposits, pet fees and similar deposits and fees thereunder;

    (d)    A current, certified rent roll ("**_Rent Roll_**") covering the Leases;

    (e)    "**_Tenant Notice Letters_**" (herein so called) dated as of the Closing Date containing Seller's instructions to the tenants of the Property for payment of rental directly to Buyer or Buyer's managing agent and informing tenants that its security deposit (if any) has been transferred to the Buyer in a form which complies with the laws of the state in which the Property is located;

    (f)    "**_Property Contract Notice Letters_**" (herein so called) dated as of the Closing Date containing Seller's notice of the assignment and assumption of the Property Contracts that have not been terminated to the providers under the Property Contracts;

    (g)    Evidence of Seller's capacity and authority for the Closing of this transaction as customarily required by the Title Company;

    (h)    Non-Foreign Transferor Certification in the form of **Exhibit E-1** and **Exhibit E-2**, respectively, attached hereto, duly executed by the Seller (collectively, the "**_FIRPTA Affidavit_**"):

    (i)    At the Property or delivered to the Buyer, originals of all Leases with all amendments thereto, if applicable (or true and correct copies if the originals are not available to Seller), lease files relating to the Leases and vendor files relating to the Property Contracts that have not been terminated, to the extent same are customarily maintained at the Property otherwise delivered as agreed by the parties;

    (j)    Possession of the Property, subject only to the Leases;

    (k)    To the extent the same are in the Seller's possession or are located at the Property, all keys to all locks on the Property;

(l)     To the extent not previously delivered to Buyer, all necessary permits issued by appropriate governmental authorities and utility companies when the Improvements were completed, to the extent in the possession of Seller;

(m)     To the extent not previously delivered to Buyer, any plans, specifications, mechanical, electrical and plumbing layouts, operating manuals, leasing information and the like in the possession of Seller and utilized in connection with the construction or operation of the Property, to the extent in the possession of Seller;

(n)     An executed, customary title affidavit which is acceptable to the Title Company to enable the Title Company to issue the Title Policy subject only to the Permitted Exceptions at regular rates;

(o)     Executed conveyancing or transfer tax forms or returns as are required to be delivered or signed by Seller by applicable state and local law in connection with the conveyance of the Property, if applicable;

(p)     A certificate executed by Seller stating that Seller's representations and warranties are true and correct in all material respects as of Closing. The failure of Seller to execute or deliver such certificate at Closing shall not affect the requirement that Seller's representations and warranties be true and correct as of the Closing as provided in this Contract; and

(q)     An executed settlement statement; and

(r)     All other necessary documents reasonably required by the Title Company to close this transaction in accordance with this Contract.

6.3     **Buyer's Obligations**. At Closing, Buyer shall deliver, and where applicable, duly execute and acknowledge, at Buyer's sole cost and expense, the following:

(a)     The balance of the Sales Price (adjusted by the prorations as described in this Contract);

(b)     Buyer's counterparts of the Assignment of Leases, Bill of Sale and Assignment, Tenant Notice Letters and the settlement statement provided for herein;

(c)     Evidence of its capacity and authority for the Closing of this transaction; and

(d)     A certificate executed by Buyer stating that Buyer's representations and warranties are true and correct in all material respects as of Closing. The failure of Buyer to execute or deliver such certificate at Closing shall not affect the requirement that Buyer's representations and warranties be true and correct as of the Closing as provided in this Contract; and

(e)     All other necessary documents reasonably required by the Title Company to close this transaction in accordance with this Contract.

6.4     **Seller and Buyer Obligations**. At the Closing, Seller and Buyer will cooperate with one another to finalize the Tenant Notice Letters and deliver same to each of the tenants under the Leases and the Property Contract Notice Letters and deliver same to each provider under the Property Contracts assumed by Buyer.

12

6.5     **Closing Costs**.

(a)     Unless otherwise provided herein or already paid outside of Closing, at Closing Seller agrees to pay the costs for:

(i)     One-half of the any and all transfer taxes or similar charges due in connection with the sale of the Property, except that Buyer shall be responsible for 100% of any transfer taxes due in connection with any assignment of this Contract by Buyer;

(ii)     deed preparation;

(iii)     any fees, charges and expenses imposed by Seller's existing lender;

(iv)     recording fees to terminate any existing mortgages or financing statements;

(v)     tax certificates; and

(vi)     one-half of the escrow fee charged by the Title Company.

(b)     Unless otherwise provided herein or already paid outside of Closing, at Closing Buyer agrees to pay:

(i)     One-half of the any and all transfer taxes or similar charges due in connection with the sale of the Property, except that Buyer shall be responsible for 100% of any transfer taxes due in connection with any assignment of this Contract by Buyer;

(ii)     any and all fees and costs related to Buyer's financing, if any of the purchase;

(iii)     fees and costs in connection with obtaining the New Survey, if any;

(iv)     one-half of the escrow fee;

(v)     recording fees for Buyer's loan documents (if applicable);

(vi)     recording fees for the Deed;

(vii)     costs related to additional due diligence studies ordered by Buyer; and

(viii)     the cost of the Title Policy and any endorsements or extended endorsements to the Title Policy, which Buyer or Buyer's Lender may require.

All other costs and expenses incurred in connection with this Contract that are not expressly recited herein to be the obligation of Seller or Buyer shall be allocated among Buyer and Seller as is customary in Philadelphia, Pennsylvania. Except as provided in Section 13.3, each party shall pay its own attorney's fees, accounting fees and costs associated with the transaction contemplated hereby.

13

6.6 **Closing Prorations and Adjustments**. The following items are to be prorated or adjusted (as appropriate) as of the close of business on the Closing Date on a per diem basis, it being understood that for purposes of prorations and adjustments, Seller shall be deemed the owner of the Property on such day and Buyer shall be deemed the owner of the Property as of the day after the Closing Date:

(a) real estate and personal property taxes and assessments (on the basis of the most recent ascertainable valuation and tax rate if the current bill is not then available);

(b) Rent, including, without limitation, fixed rent, percentage rent, if applicable, and additional rent (including washer/dryer charges) if applicable (collectively, "***Rent***"). Thereafter, Buyer shall use reasonable efforts to collect all past due as well as currently due Rent from such tenant. All Rents received shall be applied first to the one month period subsequent to Closing and then any balance paid to Seller on account of past due Rent.

(c) Buyer shall be credited, and Seller shall be charged with any security deposits, pet deposits, cleaning deposits and advanced rentals which have not been applied under the applicable Lease prior to the Closing. After the expiration of the Inspection Period, Seller shall not apply such deposits under Leases where the tenant remains in occupancy at Closing;

(d) water, electric, telephone and all other utility charges (to the extent possible, the parties shall arrange utility meter readings on the day immediately preceding the Closing Date), and Seller, at Seller's cost and expense may have the deposits held by utility companies returned to Seller by the utility companies.

(e) assignable license and permit fees;

(f) other income and expenses related to the operation of the Property, however in the case of one-time laundry room, cable marketing, tenant move-in charges and/or other similar up-front fees received prior to Closing shall not be prorated; and

(g) Buyer shall have no responsibility for and Seller shall pay in full prior to Closing any and all leasing commissions and tenant improvement allowances incurred or assumed under any lease executed prior to the Effective Date.

6.7 **Tax Protest and Assessment**. Seller shall not be permitted (i) to meet with governmental officials and to contest any reassessment governing or affecting the Property, or (ii) to contest any assessment of the Property or any portion thereof and to attempt to obtain a refund for any taxes previously paid after the expiration of the Inspection Period without Buyer's express written consent, which consent shall not be unreasonably withheld, conditioned or delayed, and then only under the terms and conditions as reasonably determined by Buyer.

6.8 **Post-Closing Adjustment**. If any of the items described in Section 6.6 cannot be apportioned at the Closing because of the unavailability of information as to the amounts which are to be apportioned or otherwise, or are incorrectly apportioned at Closing or subsequent thereto, such items shall be apportioned or reapportioned, as the case may be, as soon as practicable after the Closing Date or the date such error is discovered, as applicable; provided that, neither party shall have the right to request apportionment or reapportionment of any such item at any time following that date which is one (1) year after the Closing Date. Notwithstanding the foregoing, if the Closing shall occur before a real estate or personal property tax rate or assessment is fixed for the tax year in which the Closing occurs, the apportionment of taxes at the Closing shall be upon the basis of the tax rate or assessment for the preceding fiscal

14

year applied to the latest assessed valuation. Promptly after the new tax rate or assessment is fixed, the apportionment of taxes or assessments shall be recomputed and any discrepancy resulting from such re-computation and any errors or omissions in computing apportionments at Closing shall be promptly corrected and the proper party reimbursed, which obligations shall survive the Closing.   Any corrected adjustment or prorations shall be paid to the party entitled thereto. Notwithstanding the foregoing, if either party fails, within one (1) year after the Closing Date, to demand that an item of income or expense be apportioned in accordance with Section 6.6, such party shall be deemed to have waived the right to apportion such item. Within the one year period, either party may audit, inspect and photocopy the other's records regarding the income and expenses with respect to the Property for the year of the Closing (or period necessary for calculating the income and expenses, and the tenant reimbursements under the Leases for the calendar year of Closing).

6.9    **Survival of Proration and Adjustment**. The provisions of <u>Sections 6.6, 6.7</u> and <u>6.8</u> shall survive the Closing.

6.10    **Closing**. On the Closing Date, subject to Title Company having received the documents and monies required to be deposited into Escrow pursuant to this Agreement and Title Company having received no written notice by a party that a condition precedent to its obligation to close has not been satisfied, Title Company shall do or cause to be done each of the following after receipt of written authorization from Seller and Buyer:

(a)    Duly record the Deed and arrange for conformed copies to be delivered to the parties as soon as available;

(b)    Deliver to Buyer one (1) fully executed copy of the Assignment of Leases, the Bill of Sale and Assignment, and the FIRPTA Affidavit;

(c)    Deliver to Seller one (1) fully executed copy of the Assignment of Leases and the Bill of Sale and Assignment; and

(d)    Deliver to Seller the balance of the Purchase Price remaining after adding all of the credits Seller is entitled to under this Contract and deducting all costs and expenses which Seller is obligated to pay pursuant to this Contract, as shown on the final settlement statement executed by Seller and Buyer.

### ARTICLE VII
### BROKER'S FEES

Upon Closing of the transaction contemplated by the Contract, Seller agrees to pay Rittenhouse Realty Advisors (the "***Broker***") a commission pursuant to the terms of a separate Exclusive Listing Agreement (the "***Commission***"). Buyer and Seller represent and warrant to each other that they have not engaged the services of any real estate broker or real estate agent in connection with this transaction other than Broker. Each party agrees to indemnify and hold the other harmless from any and all claims for brokerage fees or commissions ever made or asserted against the other by any party to the extent that the indemnifying party's actions or alleged actions form the basis of any such claims for commissions against the indemnified party. The right of Broker to such Commission shall vest only upon the Closing of this Contract. The Commission shall be paid by Seller out of Seller's closing proceeds, in immediately available funds, directly to the party entitled thereto. No commissions will be due if the Closing does not

15

occur. The indemnity obligations under this <u>Article VII</u> shall survive the Closing or termination of this Contract. This Contract may be amended, including without limitation, the Sales Price, or terminated at any time without the consent of Broker.  Seller hereby advises Buyer that David Blumenfeld, a principal of Seller, is a licensed real estate broker.

## ARTICLE VIII
## CASUALTY LOSS

8.1     If at any time prior to Closing any portion of the Improvements are destroyed or materially damaged by fire or any other casualty whatsoever, Seller shall give notice thereof to Buyer (the "***Casualty Notice***") within five (5) Business Day after Seller becomes aware of such casualty, but in any event prior to Closing. The rights and obligations of the parties by reason of such destruction or damage shall be as follows:

(a)     If the Cost of Repair and Restoration (as defined in <u>Section 8.2</u>) of such destruction or damage is less than or equal to one percent (1%) of the Sales Price, then Seller either (i) shall repair such damage as promptly as is reasonably possible, restoring the damaged Improvement to its condition immediately prior to such damage; and in such event, Seller may elect to defer Closing for up to thirty (30) days to complete such repair or (ii) shall elect to give a credit to Buyer against the Sales Price in the amount of the Cost of Repair and Restoration; provided, however, that in such event Buyer may elect that Seller instead assign the Buyer at Closing, provided the insurer acknowledges in writing Buyer's right to such proceeds, all Seller's rights under the property insurance proceeds (plus any rent loss insurance) with respect to the destruction with a credit against the Sales Price for the amount of the applicable deductible, and Seller shall not be required to make such repairs or to provide such credit;

(b)     If the Cost of Repair and Restoration (as defined in <u>Section 8.2</u>) of such destruction or damage shall exceed one percent (1%) of the Sales Price, Buyer may elect to terminate this Contract by delivering written notice to Seller on or before the expiration of ten (10) days after the later of the date Seller delivers the Casualty Notice to Buyer or the date Seller gives Buyer the estimate of the Cost of Repair and Restoration (and if necessary, the Closing Date shall be extended to give Buyer the full ten-day period to make such election and to obtain insurance settlement agreements with Seller's insurers). If Buyer does not elect to terminate this Contract, Closing shall occur as scheduled (subject to the extension of the Closing Date set forth in the preceding sentence), whereupon Seller shall assign to Buyer, provided the insurer acknowledges in writing Buyer's right to such proceeds, all of Seller's rights in and to any resulting insurance proceeds (plus any rent loss insurance) due Seller as a result of such damage or destruction with a credit against the Sales Price for the amount of the applicable deductible and Seller shall not be required to make such repairs. In the event Buyer elects to terminate this Contract, this Contract shall be rendered null and void and the parties shall have no further obligations or liabilities hereunder (except those that expressly survive termination of this Contract) and the Deposit will be refunded to Buyer.

8.2     <u>**Cost of Repair and Restoration**</u>. The term "***Cost of Repair and Restoration***" shall mean the reasonable estimate of the cost of repair and restoration obtained by Seller as soon as reasonably possible after the occurrence of such destruction or damage, from a reputable contractor reasonably acceptable to both Buyer and Seller, regularly doing business in the City of Philadelphia.

16

## ARTICLE IX
## CONDEMNATION; RELEASE OF HAZARDOUS MATERIALS

In the event of any pending or threatened condemnation proceeding or release or suspected presence or release of Hazardous Materials affecting the Property, Seller shall promptly notify Buyer thereof. Buyer may elect to terminate this Contract by written notice to Seller prior to the Closing, in which event this Contract shall terminate, the Deposit shall be returned to Buyer (after following the steps in <u>Section 3.2</u> hereof), this Contract shall be rendered null and void and the parties shall have no further obligations or liabilities hereunder (except those that expressly survive termination of this Contract). If any such condemnation proceeding occurs or is threatened which affects the Property, but Buyer does not elect to terminate this Contract, Buyer shall be entitled to any compensation, awards or other payments or relief resulting from such condemnation proceeding, and Seller shall assign to Buyer any such compensation, awards or other payments or relief.

## ARTICLE X
## WARRANTIES, REPRESENTATIONS AND COVENANTS

10.1 **Seller Representations and Warranties**.  Seller represents and warrants to Buyer, which shall be true and correct as of the date hereof and as of the Closing Date, that:

(a)      Seller has the full right, power and authority to sell the Property as provided in this Contract and to carry out Seller's obligations hereunder, and all requisite action necessary to authorize Seller to enter into this Contract and to carry out its obligations hereunder have been, or by the Closing will have been taken.

(b)      There are no management, service, equipment, supply, security, maintenance, construction, concession or other agreements with respect to or affecting the Property, except for the Property Contracts identified on **Schedule 1.1(f)** and **Schedule 1.1(g).**

(c)      There is no action, suit or proceeding pending or, to the knowledge of Seller, threatened against or affecting Seller or the Property or any portion thereof or any of the Leases or Property Contracts in any court or before or by any federal, state, county or municipal department, commission, board, bureau or agency or other governmental instrumentality.

(d)      No person or other party has any right to lease or otherwise occupy the Property other than the tenants identified in the Leases.

(e)      The rent rolls attached as **Schedule 1.1(e)** provide a true and complete list of all Leases at the Property existing as on the date of such rent rolls, including: (i) the unit occupied by each tenant, (ii) the expiration date of each Lease, (iii) the monthly rent to be paid by each tenant, and (iv) security deposit paid under each Lease.

(f)      Seller has not received or delivered any notice that either the tenant or the landlord is in default under any of the Leases.

(g)      The copies of each of the Leases being delivered by Seller to Buyer as part of the Due Diligence Information is a true and complete copy each of the Leases, which has not been further amended, modified, or supplemented; and each of the tenants under the Leases has no right to extend or renew the term thereof except as expressly set forth in each of the Leases.

17

(h)    Seller has assigned none of its rights under the Leases, except in connection with any financing that will paid-off at Closing;

(i)    No lease commissions are due with respect to Leases except in the ordinary course.

(j)    No notices of condemnation have been received by Seller.

(k)    The current zoning classification of the CP 17 Property under the Philadelphia Zoning Code is RSA-5.   The current zoning classification of 3608-12 Spring Garden Street under the Philadelphia Zoning Code is RSA-3. The current zoning classification of 4027 Baring Street under the Philadelphia Zoning Code is RSA-5.

(l)    Seller is not, nor will Seller become on or prior to the Closing Date, a person or entity with whom United States persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those names on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 23, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities.

10.2   **Buyer's Knowledge**. Notwithstanding anything contained in this Contract to the contrary, Seller shall have no liability for breaches of any representations, warranties, covenants and certifications (the "*__Representations__*") which are made by Seller herein or in any of the documents or instruments required to be delivered by Seller hereunder if Buyer or Buyer Parties had knowledge of such breach by Seller, including without limitation, knowledge gained by Buyer and/or Buyer Parties in the course of their inspections or through updates provided by Seller as to a fact or circumstance which, by its nature, indicates that a Representation was or has become untrue or inaccurate, where Buyer elects to proceed to close the transaction contemplated by this Contract. In addition to any other remedies available to Buyer in law or equity, in the event of a material pre-closing breach of Representations by Seller, Buyer may elect to terminate this Contract in which event, the Deposit shall be returned to Buyer, and the parties shall have no further obligations or liabilities hereunder (except those that expressly survive termination of this Contract). The terms of this <u>Section 10.2</u> shall survive Closing or termination of this Contract.

10.3   **Buyer Representations and Warranties**. Buyer represents and warrants to Seller, which shall be true and correct as of the date hereof and as of the Closing Date, that:

(a)    Buyer has the full right, power and authority to purchase the Property as provided in this Contract and to carry out Buyer's obligations hereunder, and all requisite action necessary to authorize Buyer to enter into this Agreement and to carry out its obligations hereunder have been, or by the Closing will have been taken.

(b)    Buyer has all funds available to it which are sufficient to consummate the transactions contemplated by this Agreement.

(c)    Buyer is satisfied with the amount being paid by it for the Property, as set forth herein, based and in sole reliance upon its own valuation of the Property and its review and analysis of the Leases for the Property, reports of physical inspections (including without

18

limitation, environmental inspections), business, operations, condition and prospects for the Property, and the representations of Seller expressly set forth herein.

(d)     Buyer has knowledge and expertise in financial and business matters that enable it to evaluate the risks and merits of the business transactions contemplated by this Agreement.

(e)     Buyer has been represented by legal counsel of its own choice and designation in connection with the transactions contemplated by this Agreement.

(f)     Buyer is not a person and/or entity with whom Seller is restricted from doing business under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq.; the Trading With the Enemy Act, 50 U.S.C. App. § 5; the USA Patriot Act of 2001; any executive orders promulgated thereunder, any implementing regulations promulgated thereunder by OFAC (including those persons and/or entities named on OFAC's List of Specially Designated Nationals and Blocked Persons); or any other applicable law of the United States.

10.4   **Seller's Covenants**. Seller hereby covenants and agrees with Buyer, after the date specified in each covenant below:

(a)     After the expiration of the Inspection Period, Seller will not enter into any lease, license or other occupancy agreements or contracts affecting any portion of the Property without Buyer's prior written consent, which consent shall be in Buyer's sole discretion, except for: (i) leases or contracts that will be fully performed prior to the Closing; or (ii) residential lease agreements in the ordinary course of business and on an arms-length basis on Seller's standard lease form, provided that such leases shall not have a term in excess of eighteen months and rental charges shall be at or above fair market value;

(b)     After the expiration of the Inspection Period, Seller will not initiate any zoning reclassification of the Property or seek any variance under existing zoning ordinances or regulations applicable to the Land without Buyer's prior written consent;

(c)     After the expiration of the Inspection Period, Seller will not voluntarily impose any restrictive covenants or encumbrances on the Property or execute or file any subdivision plat affecting the Property without the Buyer's prior written consent;

(d)     After the Effective Date, Seller will operate the Property in the ordinary course of its business as conducted prior to the Effective Date including insuring the Property consistent with the insurance in place immediately prior to the Effective Date and shall maintain the Property in its present condition, reasonable wear and tear excepted, provided, after the expiration of the Inspection Period, Seller shall not, other than in connection with routine maintenance, make any alterations or capital improvements without the consent of Buyer, which consent shall not be unreasonably withheld, delayed or conditioned;

(e)     All permits, licenses and occupancy certificates, including, but not limited to, all building, and use permits and a certificate of occupancy shall be maintained through Closing;

(f)     Seller agrees to promptly notify Buyer of any fact of which Seller becomes aware which would cause any of the representations or warranties of Seller set forth herein to become false and of any notice that Seller receives regarding any of the matters referred to in the matters set forth in Seller's representations or warranties; and

(g)     Until the Closing or the earlier termination of this Agreement, Seller or its agent, at its sole cost and expense, will provide Buyer with a monthly rent roll.

10.5    **Reserved**.

10.6    **Certain Limitations on Seller's Representations and Warranties**.  The representations and warranties of Seller set forth in <u>Section 10.1</u> of this Contract are subject to the following express limitations:

(a)     Seller does not represent or warrant that: (i) any particular Lease or Property Contract will be in force or effect as of the Closing; or (ii) the tenants and the parties to the Property Contracts will not be in default under their respective Leases or Property Contracts as of the Closing Date; provided however, that Seller shall disclose such changes in the status of any Property Contracts and any default under the Property Contracts to which Seller has knowledge thereof. The termination by Seller of any Lease in accordance with the terms of this Contract shall not affect the obligation of Buyer under this Contract; and

(b)     To the extent Seller has delivered or made available to Buyer or Buyer Parties copies of the documents and other materials referred to in this Contract and the Exhibits referenced herein and such documents and other materials contain provisions inconsistent with or different from the representations and warranties made herein and Seller has specifically notified Buyer of such differences or inconsistencies, then such representations and warranties shall be deemed modified to conform them to the provisions of such documents and materials.

10.7    **General and Specific Disclaimers**. PROVIDED THAT THE SELLER OR SELLER'S AGENT HAS NOT MADE ANY FRAUDULENT OR NEGLIGENT MATERIAL MISREPRESENTATIONS TO THE BUYER OR BUYER'S AGENTS, **EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT AND THE WARRANTIES CONTAINED IN THE DEED OF CONVEYANCE, BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO: (i) THE VALUE, NATURE, QUALITY OR, CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY; (ii) THE INCOME TO BE DERIVED FROM THE PROPERTY; (iii) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER OR ANY TENANT MAY CONDUCT THEREON; (iv) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY; THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY; (vi) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY, (vii) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY; (viii) COMPLIANCE WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING THE EXISTENCE IN OR ON THE PROPERTY OF HAZARDOUS MATERIALS; OR (ix)**

20

EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT AND THE WARRANTIES CONTAINED IN THE DEED OF CONVEYANCE, ANY OTHER MATTER WITH RESPECT TO THE PROPERTY. ADDITIONALLY, NO PERSON ACTING ON BEHALF OF SELLER IS AUTHORIZED TO MAKE, AND BY EXECUTION HEREOF BUYER ACKNOWLEDGES THAT NO PERSON HAS MADE, ANY REPRESENTATION, AGREEMENT, STATEMENT, WARRANTY, GUARANTY OR PROMISE REGARDING THE PROPERTY OR THE TRANSACTION CONTEMPLATED HEREIN; AND NO SUCH REPRESENTATION, WARRANTY, AGREEMENT, GUARANTY, STATEMENT OR PROMISE, IF ANY, MADE BY ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE VALID OR BINDING UPON SELLER IN EACH CASE UNLESS EXPRESSLY SET FORTH HEREIN. EXCEPT AS SET FORTH IN THIS CONTRACT, BUYER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY THAT WAS PREPARED BY A THIRD PARTY, WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND EXCEPT AS SET FORTH IN THIS CONTRACT MAKES NO REPRESENTATIONS, AS TO THE ACCURACY, TRUTHFULNESS OR COMPLETENESS OF SUCH INFORMATION. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY VERBAL OR WRITTEN STATEMENT, REPRESENTATION OR INFORMATION PERTAINING TO THE PROPERTY, OR THE OPERATION THEREOF, FURNISHED BY ANY REAL ESTATE BROKER CONTRACTOR, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT TO THE MAXIMUM EXTENT PERMITTED BY LAW, OTHER THAN THE REPRESENTATIONS AND WARRANTIES SPECIFICALLY CONTAINED IN THIS CONTRACT AND THE WARRANTIES CONTAINED IN THE DEED OF CONVEYANCE, THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE "AS IS" AND WITH ALL FAULTS INCLUDING EXPRESSLY, BUT WITHOUT LIMITATION, THOSE RELATING TO THE IMPROVEMENTS ON THE LAND. IT IS UNDERSTOOD AND AGREED THAT THE SALES PRICE HAS BEEN ADJUSTED BY PRIOR NEGOTIATION TO REFLECT THAT THE PROPERTY IS SOLD BY SELLER AND PURCHASED BY BUYER SUBJECT TO THE FOREGOING.

**10.8** <u>Release</u>. PROVIDED THAT THE SELLER OR SELLER'S AGENT HAS NOT MADE ANY FRAUDULENT OR NEGLIGENT MATERIAL MISREPRESENTATIONS TO THE BUYER OR BUYER'S AGENTS, **EXCEPT FOR THE REPRESENTATIONS, COVENANTS AND OBLIGATIONS OF SELLER EXPRESSLY SET FORTH IN THIS CONTRACT AND THE WARRANTIES CONTAINED IN THE DEED OF CONVEYANCE, UPON BUYER'S EXECUTION OF THIS CONTRACT, BUYER HEREBY RELEASES SELLER AND SELLER PARTIES (AS THE CASE MAY BE) EACH OF THEIR RESPECTIVE MEMBERS, PARTNERS, PARENTS, AFFILIATED AND SUBSIDIARY ENTITIES AND ALL OF THEIR RESPECTIVE MEMBERS,**

21

OFFICERS, DIRECTORS, SHAREHOLDERS, TRUSTEES, PARTNERS, EMPLOYEES, MANAGERS AND AGENTS (COLLECTIVELY, "*SELLER'S AGENTS*") FROM ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES WHETHER SUIT IS INSTITUTED OR NOT) WHETHER KNOWN OR UNKNOWN, LIQUIDATED OR CONTINGENT (HEREINAFTER COLLECTIVELY CALLED THE "*CLAIMS*") ARISING FROM OR RELATING TO: (i) ANY DEFECTS (PATENT OR LATENT), ERRORS OR OMISSIONS IN THE DESIGN OR CONSTRUCTION OF THE IMPROVEMENTS WHETHER THE SAME ARE THE RESULT OF NEGLIGENCE OR OTHERWISE; AND (ii) ANY OTHER CONDITIONS, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO THE BUILDING FACADE, ENVIRONMENTAL AND OTHER PHYSICAL CONDITIONS AFFECTING THE PROPERTY WHETHER THE SAME ARE A RESULT OF NEGLIGENCE OR OTHERWISE, EXCLUDING CLAIMS AGAINST SELLER AND/OR SELLER'S AGENTS FOR ACTS OF FRAUD, GROSS NEGLIGENCE AND WILLFUL MISCONDUCT OR INTENTIONAL MISREPRESENTATION. THE RELEASE SET FORTH IN THIS **SECTION 10.8** SPECIFICALLY INCLUDES, WITHOUT LIMITATION, ANY CLAIMS UNDER ANY ENVIRONMENTAL REQUIREMENTS OR UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990, AS ANY OF THE SAME MAY BE AMENDED FROM TIME TO TIME AND ANY REGULATIONS, ORDERS, RULES OF PROCEDURES OR GUIDELINES PROMULGATED IN CONNECTION THEREWITH, REGARDLESS OF WHETHER THEY ARE IN EXISTENCE ON THE DATE OF THIS CONTRACT. BUYER ACKNOWLEDGES THAT BUYER IS GRANTING THIS RELEASE OF ITS OWN VOLITION AND AFTER CONSULTATION WITH BUYER'S COUNSEL.

10.9   Waiver. BUYER HEREBY REPRESENTS AND WARRANTS TO SELLER THAT: (i) BUYER IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION FROM SELLER; (ii) BUYER IS REPRESENTED BY INDEPENDENT LEGAL COUNSEL OF BUYER'S SELECTION; (iii) BUYER IS SEEKING TO ACQUIRE THE PROPERTY, WHICH WILL NOT BE USED AS A RESIDENCE, FOR INVESTMENT PURPOSES; AND (iv) BUYER IS A SOPHISTICATED REAL ESTATE INVESTOR AND HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THIS TRANSACTION. BUYER HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHTS, REMEDIES AND BENEFITS UNDER ANY CONSUMER PROTECTION LAW, WHETHER FEDERAL, STATE OR LOCAL. BUYER COVENANTS NOT TO SUE SELLER UNDER ANY SUCH CONSUMER PROTECTION LAW.

The provisions of these Sections 10.6 through 10.9 shall survive the closing or any termination of this Contract and the provision of Section 10.7 will not serve to diminish the warranty of title made by Seller in the Deed or invalidate the express representations or warranties made by Seller in this Contract.

## ARTICLE XI
## CONDITIONS PRECEDENT TO BUYER'S PERFORMANCE

22

11.1    **Conditions For Buyer's Benefit**. The obligations of Buyer to consummate the transaction contemplated hereby are subject to the following conditions, any of which, if not fulfilled by the Closing or as otherwise provided herein and which remain uncured after five (5) Business Days from Seller's receipt of written notice from Buyer listing such failed condition (provided, however, that no such notice shall be required if the failed condition is Seller's failure to Close the transaction on the Closing Date), shall entitle Buyer (at its option) to terminate this Contract, and if the termination is a result of clause (a), (b) or (c) below, to receive a refund of the Deposit:

(a)    The transactions contemplated under this Contract to be effected on the Closing Date shall not have been restrained or prohibited by any injunction or order or judgment rendered by any court or other governmental agency of competent jurisdiction and no proceeding shall have been instituted and be pending in which any creditor of Seller or any other person seeks to restrain such transactions or otherwise to attach any of the Property;

(b)    All warranties and representations made by Seller herein shall be truthful in all material respects, as of the date made and as of the Closing Date.

(c)    Title Company shall be irrevocably committed to issue the Title Policy containing exceptions only for the Permitted Exceptions;

(d)    Each of the contingencies shall have been satisfied or waived by Buyer within the applicable time frames as set forth herein; and

(e)    Buyer shall not have exercised its right to terminate this Agreement pursuant to this Agreement.

## ARTICLE XII
## CONDITIONS PRECEDENT TO SELLER'S PERFORMANCE

12.1    **Conditions For Seller's Benefit**. The obligations of Seller to consummate the transaction contemplated hereby are subject to the following conditions, any of which, if not fulfilled by the Closing or as otherwise provided herein, and which remain uncured after five (5) Business Days from Buyer's receipt of written notice from Seller listing such failed condition (provided, however, that no such notice shall be required if the failed condition is Buyer's failure to Close the transaction on the Closing Date), shall entitle Seller (as its sole remedy) to terminate this Contract and retain the Deposit:

(a)    The transactions contemplated under this Contract to be effected on the Closing Date shall not have been restrained or prohibited by any injunction or order or judgment rendered by any court or other governmental agency of competent jurisdiction and no proceeding shall have been instituted and be pending in which any creditor of Seller or any other person seeks to restrain such transactions or otherwise to attach any of the Property;

(b)    All warranties and representations made by Buyer herein shall be truthful in all material respects, as of the date made and as of the Closing Date; and

(c)    Seller shall not have exercised its right to terminate this Agreement pursuant to this Agreement.

119842729_4

## ARTICLE XIII
## DEFAULT

13.1    **Buyer's Default**. If Buyer defaults in its obligations hereunder to (a) deliver the Deposit or any portion thereof (or any other deposit or payment as and when required under this Contract of Buyer hereunder), or (b) deliver the Sales Price at the time required by this Contract and close on the purchase of the Property on the Closing Date subject to the terms of this Contract, then Seller may, as its sole and exclusive remedy, terminate this Contract by written notice to Buyer and Escrow Agent and receive the Deposit as liquidated damages, and in either case, neither party shall be obligated to proceed with the purchase and sale of the Property. Upon receipt of such termination notice, Escrow Agent shall follow the steps provided for in Section hereof. If Buyer defaults in any of its other representations, warranties or obligations under this Contract in any material manner, and such default continues for more than five (5) Business Days after written notice from Seller, then Seller may, as its sole and exclusive remedy, terminate this Contract by written notice to Buyer and Escrow Agent, in which case Buyer shall forfeit the Deposit, and the Escrow Agent shall deliver the Deposit to Seller (after following the steps provided for in Section 3.2 hereof), and neither party shall be obligated to proceed with the purchase and sale of the Property. The Deposit is liquidated damages and recourse to the Deposit is, except for Buyer's indemnity and confidentiality obligations hereunder, Seller's sole and exclusive remedy for Buyer's failure to perform its obligation to purchase the Property or breach of a representation or warranty. Seller expressly waives the remedies of specific performance and additional damages for such default by Buyer. **SELLER AND BUYER ACKNOWLEDGE THAT SELLER'S DAMAGES WOULD BE DIFFICULT TO DETERMINE, AND THAT THE DEPOSIT IS A REASONABLE ESTIMATE OF SELLER'S DAMAGES RESULTING FROM A DEFAULT BY BUYER IN ITS OBLIGATION TO PURCHASE THE PROPERTY. SELLER AND BUYER FURTHER AGREE THAT THIS SECTION 13.1 IS INTENDED TO AND DOES LIQUIDATE THE AMOUNT OF DAMAGES DUE SELLER, AND SHALL BE SELLER'S EXCLUSIVE REMEDY AGAINST BUYER, BOTH AT LAW AND IN EQUITY, ARISING FROM OR RELATED TO A BREACH BY BUYER OF ITS OBLIGATION TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED BY THIS CONTRACT, OTHER THAN WITH RESPECT TO BUYER'S INDEMNITY AND CONFIDENTIALITY OBLIGATIONS HEREUNDER. IN NO EVENT SHALL ANY OF BUYER'S PARTIES HAVE ANY LIABILITY FOR ANY CLAIM, CAUSE OF ACTION OR OTHER LIABILITY ARISING OUT OF OR RELATING TO SELLER'S OBLIGATIONS UNDER THIS CONTRACT, WHETHER BASED ON CONTRACT, COMMON LAW, STATUTE, EQUITY OR OTHERWISE.**

13.2    **Seller's Default**. If Seller, prior to the Closing, materially defaults in its representations, warranties, covenants, or obligations under this Contract, and such default continues for more than five (5) Business Days after written notice from Buyer, then, Buyer may, at its election and as its sole and exclusive remedy, either (i) terminate this Contract and receive a refund of the Deposit from Escrow Agent (after following the steps in Section 3.2 hereof), together with reimbursement by Seller of all actual out of pocket costs and expenses incurred by Buyer in connection with the transaction contemplated under this Contract not to exceed Twenty-Five Thousand and 00/100 Dollars ($25,000.00); or (ii) bring an action to enforce specific performance of this Contract against Seller. **SELLER AND BUYER FURTHER AGREE THAT THIS SECTION 13.2 IS**

24

**INTENDED TO AND DOES LIMIT THE REMEDIES AVAILABLE TO BUYER, AND SHALL BE BUYER'S EXCLUSIVE REMEDY AGAINST SELLER, BOTH AT LAW AND IN EQUITY ARISING FROM OR RELATED TO A BREACH BY SELLER OF ITS REPRESENTATIONS, WARRANTIES, OR COVENANTS OR ITS OBLIGATION TO CONSUMMATE THE TRANSACTIONS CONTEMPLATED BY THIS CONTRACT.**

13.3    **Attorney's Fees**. Any signatory to this Contract who is the prevailing party against any other signatory in any legal proceeding brought under or with relation to this Contract or sale transaction shall be additionally entitled to recover from the non-prevailing party court costs, reasonable attorneys' fees, and all other litigation expenses, including deposition, travel, and expert witness costs and fees.

13.4    **Other Fees**. If this Contract is terminated due to the default of a party, then the defaulting party shall pay any fees or charges due to Escrow Agent for holding the Earnest Money as well as any escrow cancellation fees or charges and any fees or charges due to the Title Company for preparation and/or cancellation of the Title Commitment.

**ARTICLE XIV**
**NOTICES**

Any notice, demand, request or communication required or permitted hereunder shall be deemed to be delivered, whether actually received or not, when addressed to the intended recipient at the address provided below: (a) upon delivery or refusal of delivery after being deposited in the United States mail, postage fully prepaid, registered or certified mail, return receipt requested; (b) upon delivery or refusal of delivery after being deposited with a nationally recognized overnight courier, postage fully prepaid; or (c) that same day when emailed or sent by fax transmission to the addresses provided below, provided that if the date of emailing or fax transmission is not a Business Day, then receipt shall be deemed to  have occurred on the following Business Day. Any address for notice may be changed by giving notice thereof as provided in this Section. The addresses and fax numbers for notice purposes are as follows:

Seller:         c/o Cross Properties
                18 East Lancaster Avenue
                Wynnewood, PA 19096
                Attn: David Blumenfeld
                Phone: (610) 574-1121
                Email: db@crossprop.com

With copy to:   Dilworth Paxson LLP
                1500 Market Street, Suite 3500E
                Philadelphia, PA 19102
                Attn: Rosemary Loverdi, Esquire
                Phone: (215) 575-7035
                Email:  rloverdi@dilworthlaw.com

Buyer:          HLSII, LLC
                N. Providence Road
                Richmond, VA 23235
                Attn: Mike Kenyon

25

Phone: (609) 306-6490
Email: mkenyon@harborlakes.net

With copy to:       Pratt Aycock, Ltd.
                    705 Gate Lane, Suite 202
                    Knoxville, TN 37909
                    Attn: Greg Pratt, Esquire
                    Phone (865) 769-6969
                    Cell: (865) 604-0566
                    Email: gpratt@prattaycock.com

Escrow Agent:       First American Title Insurance Company
                    50 S. 16th Street, Suite 2600
                    Philadelphia, PA 19102

## ARTICLE XV
## MISCELLANEOUS

15.1    **Integration**. This Contract contains the complete agreement among the parties. It cannot be varied except by the written agreement of the Buyer and Seller. The parties agree that there are no oral agreements, understandings, representations, or warranties that are not expressly set forth herein.

15.2    **Binding Effect**. This Contract shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, representatives, successors and assigns, when such are not proscribed by this Contract.

15.3    **Assignment**. Buyer may not assign this Contract or any of its rights hereunder without the express prior written consent of Seller, which consent will not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Buyer shall have the right, without Seller's prior written consent, to assign its rights under this Contract to a limited partnership, limited liability company, family trust or other legal entity in which Buyer or Buyer's principals retain an ownership interest, either directly or indirectly, provided that Buyer shall be liable for any and all realty transfer taxes resulting from such assignment and shall indemnity Seller and the Seller Parties from all costs, penalties, liabilities and expenses, including without limitation, reasonable attorney's fees and costs, associated therewith (such obligation to survive Closing). Any permitted assignee of Buyer's rights under this Contract shall expressly assume in writing each and every obligation of Buyer hereunder. In the case of any assignment under this section, Buyer is not released from any of the obligations of Buyer under this Contract.

15.4    **Legal Construction**. In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This Contract shall be construed as a whole and in accordance with its fair meaning and without regard to any presumption or other rule requiring construction against the party preparing this Contract or any part hereof.

26

15.5   **Time of the Essence**. Time is of the essence of this Contract. If the expiration of the Inspection Period or the Closing Date falls on a Saturday, Sunday or a date in which the Federal, State or local government is not open for business (a "*__Legal Holiday__*"), then the Inspection Period and/or the Closing Date shall be the first Business Day after the Saturday, Sunday or Legal Holiday. The term "*__Business Day__*" shall mean Monday through Friday, that is not a Legal Holiday.

15.6   **Governing Law**. This Contract shall be construed under in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflicts of laws principles.

15.7   **Surviving Obligations**. "*__Surviving Obligations__*" shall mean the obligations and rights that by their terms expressly survive Closing or termination of this Contract.

15.8   **Effective Date**. The "*__Effective Date__*" of this shall mean the latter of the date on which this Agreement is executed by Seller or Buyer, as indicated by either signatures or initials, which latter date shall be the date of final execution and agreement by the parties hereto.

15.9   **Exchange**. Seller or Buyer may consummate the sale/purchase of the Property as part of a so-called like kind or deferred exchange (the "*__Exchange__*") pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended. Without limitation on the foregoing, Seller or Buyer may, at its option, assign this Contract and any Deposit deposited hereunder to one or more independent third-party facilitators or intermediaries who will facilitate the Exchange. Buyer and Seller agree to cooperate with the other in the perfection of such an Exchange and to execute any and all documents reasonably necessary to accomplish same; provided, neither party shall be required to take title to any replacement property or expend funds in relation to its cooperation, nor will the time periods provided hereunder be extended.

15.10   **Indemnification Generally**. Wherever it is provided in this Contract or in any agreement or document delivered pursuant hereto that a party shall indemnify another party hereunder against liability or damages, such phrase and words of similar import shall mean that the indemnifying party hereby agrees to and does indemnify, defend and hold harmless the indemnified party and such party's direct and indirect shareholders, members or partners and their respective past, present and future officers, directors, employees and agents from and against any and all claims, damages, losses, liabilities and expenses (including, but not limited to, reasonable attorneys' fees and disbursements) to which they or any of them may become subject or which may be incurred by or asserted against any or all of them attributable to, arising out of or in connection with the matters provided for in such provision If any action, suit or proceeding is commenced, or if any claim, demand or assessment is asserted in respect of which a party is indemnified hereunder or under any agreement or document delivered pursuant hereto, the indemnified party shall give notice thereof to the indemnifying party and the indemnifying party shall be entitled to control the defense, compromise or settlement thereof, subject to the approval of the indemnified party, not to be unreasonably withheld or delayed, at the cost and expense of the indemnifying party, with counsel reasonably satisfactory to the indemnified party. The provisions of this Section 15.10 shall survive the Closing or termination of this Contract.

15.11   **Exhibits and Schedules**.

| | |
|---|---|
| Exhibit A: | Land |
| Exhibit B: | Deed |
| Exhibit C: | Bill of Sale and Assignment |

27

Exhibit D:     Assignment and Assumption of Leases
Exhibit E:     FIRPTA Affidavit

Schedule 1.1(e)     Rent Rolls/List of Leases
Schedule 1.1(f)     Service Contracts
Schedule 1.1(g)     Personal Leases
Schedule 5.3     Permitted Exceptions

15.12 **Further Assurances**. Each party agrees that it will without further consideration execute and deliver such other documents and take such other action, whether prior or subsequent to Closing, as may be reasonably requested by the other party to consummate more effectively the purposes or subject matter of this Contract.

15.13 **Counterparts**. This Contract may be executed in several counterparts, and all such executed counterparts shall constitute the same agreement. It shall be necessary to account for only one such counterpart in proving this Contract. This Contract may be executed and delivered via facsimile or by electronic mail, and such Contract executed and delivered via facsimile or electronic mail shall have the same force and effect as an original document and shall be legally binding upon the parties.

15.14 **Tender**. Tender of an executed Deed and of the Sales Price are hereby waived, but nothing herein contained shall be construed as to relieve Seller from the obligation to deliver the Deed or to relieve Buyer from the concurrent obligation to pay the balance of the Sales Price.

15.15 **No Recording**. Neither this Contract nor any memorandum or assignment hereof shall be filed in any public place of record. If recorded, such recording shall not constitute constructive or other notice to any third party. The recording or attempt to record this Contract or any memorandum or assignment hereof, by or on behalf of Buyer or any person in the place of Buyer, shall constitute a default in this Contract by Buyer.

15.16 **Waiver of Jury Trial**. **EACH OF THE PARTIES HEREBY KNOWINGLY AND INTENTIONALLY, IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS CONTRACT. THIS WAIVER SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS CONTRACT.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

119842729_4

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement to be effective as of the Effective Date.

**SELLER:**

CP ACQUISITIONS 16 LLC, a Pennsylvania limited liability company

By: CP Acquisitions 14, L.P., a Pennsylvania limited partnership, its sole member

By: CP Acquisitions 14 GP LLC, a Pennsylvania limited liability company, its sole general partner

By: _____
Name: David Blumenfeld
Title: Authorized Member
Date: 11-27-17


CP ACQUISITIONS 17 LLC, a Pennsylvania limited liability company

By: CP Acquisitions 14, L.P., a Pennsylvania limited partnership, its sole member

By: CP Acquisitions 14 GP LLC, a Pennsylvania limited liability company, its sole general partner

By: _____
Name: David Blumenfeld
Title: Authorized Member
Date: 11-27-17

**BUYER**:

HLSII, LLC,
a Virginia limited liability company

By: _____
       Orlandus Branch, its President


By: _____
       Michael Kenyon, its Vice President

Date:___12/1/2017_____

This Contract has been received and reviewed by the Title Company this the _____ day of _____, 2017. The Title Company acknowledges that all information furnished to it by the parties or obtained by the Title Company in the course of performing its duties, including acting as the escrow agent for the parties, under the Contract will be treated as confidential information.

**<u>TITLE COMPANY</u>:**

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____

Its: _____

## EXHIBIT A

## LAND

## CP 16 PROPERTY

Premises A

ALL THAT CERTAIN lot or parcel of ground, SITUATE in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania, described according to a Survey and Plan of property made by Merlyn J. Jenkins & Associates, Inc., Engineers & Surveyors dated July 30, 2015 to wit:

BEGINNING at a point located on the North right of way line of Baring Street, said point being situate North eighty five degrees four minutes and fifty seven seconds East (N 85 degrees 04' 57" E) a distance of eighteen and one hundredth feet (18.01') from a point located at the intersection of the East right of way line of North Preston Street with the aforementioned North right of way line of Baring Street; THENCE FROM THE PLACE OF BEGINNING, North two degrees fifty minutes and eight seconds West (N 2 degrees 50' 08" W) for a distance of ninety two and thirty four hundredths feet (92.34') to a point; thence, North eighty seven degrees nine minutes and fifty two seconds East (N 87 degrees 09' 52" E) for a distance of twenty two and no hundredths feet (22.00') to a point; thence, South two degrees fifty minutes and eight seconds East (S 2 degrees 50' 08" E) for a distance of ninety one and fifty four hundredths feet (91.54') to a point; thence along the aforementioned North right of way line of Baring Street, South eighty five degrees four minutes and fifty seven seconds West (S 85 degrees 04' 57" W) for a distance of twenty two and one-hundredth feet (22.01') to the place of beginning.

BEING No. 4027 Baring Street.

BEING OPA Number 88-1-8177-50.

Premises B

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 24th Ward of the City of Philadelphia described according to an ALTA/ACSM Land Title Survey made by Merlyn J. Jenkins & Associates, Inc., Surveyor, dated July 30, 2015 to wit;

BEGINNING at a point located on the South right of way line of Spring Garden Street, said point being situate South eighty three degrees forty minutes and thirty one seconds West (S 83 degrees 40' 31" W) a distance of one hundred and no hundredths feet (100.00') from a point located at the intersection of the West right of way line of 36th Street with the aforementioned South right of way line of Spring Garden Street; thence from the place of beginning, South six degrees nineteen minutes and twenty nine seconds East (S 6 degrees 19' 29" E) for a distance of one hundred twenty and no hundredths feet (120.00') to a point; thence, South eighty three degrees forty minutes and thirty one seconds West (S 83 degrees 40' 31" W) for a distance of one

hundred twenty five and no hundredths feet (125.00') to a point; thence, North six degrees nineteen minutes and twenty nine seconds West (N 6 degrees 19' 29" W) for a distance of one hundred twenty and no hundredths feet (120.00') to a point; thence along the aforementioned South right of way line of Spring Garden Street, North eighty three degrees forty minutes and thirty one seconds East (N 83 degrees 40' 31" E) for a distance of one hundred twenty five and no hundredths feet (125.00') to the place of beginning.

BEING Nos. 3608-3612 Spring Garden Street.

BEING OPA Number 88-1-5616-30.

Being the premises which Elrae Garden Realty Co., L.P., by deed dated September 8, 2015 and recorded on September 16, 2015 in the Department of Records in and for the City and County of Philadelphia as Document ID No. 52966646 granted and conveyed unto CP Acquisitions 16 LLC, a Pennsylvania limited liability company, in fee.


## CP 17 PROPERTY

ALL THAT CERTAIN lot or piece of ground, SITUATE in the 6th Ward of the City of Philadelphia, Commonwealth of Pennsylvania, being Premises A according to a Proposed Lot Consolidation Plan, prepared by Herman Ledger, PLS of Ruggiero Plante Land Design, LLC of Philadelphia, PA on August 5, 2015, bounded and described as follows:

BEGINNING at a point along the Southwesterly corner of the intersection of Baring Street (60 feet wide on City Plan - 50 feet legally open) and Wiota Street (40 feet wide on City Plan - legally open);

1.      from said point of beginning, extending South 02 degrees 50 minutes 08 seconds East, crossing a certain 3 feet wide alley which heads Westerly and communicates with another 3 feet wide alley, which heads Westerly to N Preston Street (50 feet wide on City Plan - legally open), a distance of 99.000 feet, to a point; thence

2.      extending South 85 degrees 04 minutes 57 seconds West, along said alley, a distance of 80.000 feet to a point; thence

3.      extending South 02 degrees 50 minutes 08 seconds East, along the Easterly side of said alley, a distance of 31.000 feet to a point; thence

4.      extending South 85 degrees 04 minutes 57 seconds West, along the Southerly side of said alley, a distance of 99.979 feet to a point, on the Easterly side of said N Preston Street; thence

5.      extending North 02 degrees 50 minutes 08 seconds West along the Easterly side of said N Preston Street, a distance of 130.000 feet, to a point; thence

6.      extending North (erroneously referred to as South in prior deed) 85 degrees 04 minutes 57 seconds East, along the Southerly side of said Baring Street, a distance of 179.990 feet, to the first mentioned point and place of beginning.

BEING No. 4012-4030 Baring Street.

BEING OPA Number _____.

Being the same premises described in a certain Deed of Confirmation from CP Acquisitions 17 LLC to CP Acquisitions 17 LLC dated December 2, 2015 and recorded on December 12, 2015 in the Department of Records in and for the City and County of Philadelphia as Document ID No. 52998364.

EXHIBIT "D"

| | |
|---|---|
| Subject | **883437 - Writ of Execution** |
| From | Helen Hayden <HHayden@firstam.com> |
| To | dean@weisgoldlaw.com <dean@weisgoldlaw.com> |
| Date | 2019-11-26 12:38 |

- 20191107141654099.pdf (~111 KB)

Hi Dean,

Please allow this email to serve as written confirmation that First American is holding $75K, in escrow, pending a written agreement from the parties as to how to disburse the funds. Per our discussion, this confirmation shall serve to relieve First American of its obligations to respond to the attached Interrogatories in Attachment propounded on First American in PA Civil Action – 18 cv-3283. Please let me know if you have any additional questions or concerns. Happy Thanksgiving,

Helen

**Helen Hayden**
VP, Senior Operations Counsel
National Commercial Services

 First American

1 First American Way, Santa Ana CA, 92707
Direct: 714.250.1119
Email: hhayden@firstam.com

A member of the First American Financial Corporation
family of companies | NYSE: FAF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.

If you received this email as a commercial message and would like to opt out of future commercial messages, please let us know and we will remove you from our distribution list.

Thank you.~
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
FAFLD

EXHIBIT "E"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGG BOYDEN | : | CIVIL ACTION |
| v. | : | NO.  18-cv-3283 |
| HLS II, LLC | : | |
| and | : | |
| ALICE CUMMINGS | : | |
| | : | |

## INTERROGATORIES IN ATTACHMENT

TO:   Cross Properties Realty, LLC
      18 E. Lancaster Avenue
      Wynnewood, PA 19096

You are required to file answers to the following interrogatories within twenty (20) days after service upon you.  Failure to do so may result in a default judgment being entered against you.

1.   At the time you were served or any at subsequent time, did you owe the defendant any money or were you liable to the defendant on any negotiable or other written instrument, or did the defendant claim that you owed the defendant any money or were liable to the defendant for any reason?

2.   At the time you were served or at any subsequent time, was there in your possession, custody or control or in the joint possession, custody or control of yourself and one or more other persons any money or property of any nature owned solely or in part by the defendant, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

3.   At the time you were served or any time subsequent, did you hold legal title to any money or property of any nature owned solely or in part by the Defendant or in which Defendant held or claimed any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

4.   At any time you were served or at any subsequent time, did you hold as fiduciary any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, in which the Defendant had any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

5.   At any time before or after you were served did the Defendant transfer or deliver any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to you or to any person or place pursuant to your direction or consent and if so what was the consideration therefor?

6.   At any time after you were served did you pay, transfer or deliver money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to the Defendant or to any person or place pursuant to the defendant's direction or otherwise discharge any claim of the Defendant against you?

7.   If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which funds are deposited electronically on a recurring basis and which are identified as being funds that upon deposit are exempt from execution, levy or attachment under Pennsylvania or federal law?  If so, identify each account and state the amount of funds in each account, and the entity electronically depositing those funds on a recurring basis.

8.   If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which the funds on deposit, not including any otherwise exempt funds, did not exceed the amount of the general monetary exemption under 42 Pa. C.S. §8123?  If so, identify each account.

**DEAN E. WEISGOLD, P.C.**

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Dean E. Weisgold, Esq.
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGG BOYDEN             :     CIVIL ACTION
         v.              :     NO.  18-cv-3283
HLS II, LLC              :
       and           :
ALICE CUMMINGS        :
                         :

## INTERROGATORIES IN ATTACHMENT

TO:     CP Acquisitions 16, LLC
        18 E. Lancaster Avenue
        Wynnewood, PA 19096

You are required to file answers to the following interrogatories within twenty (20) days after service upon you.  Failure to do so may result in a default judgment being entered against you.

1.      At the time you were served or any at subsequent time, did you owe the defendant any money or were you liable to the defendant on any negotiable or other written instrument, or did the defendant claim that you owed the defendant any money or were liable to the defendant for any reason?

2.      At the time you were served or at any subsequent time, was there in your possession, custody or control or in the joint possession, custody or control of yourself and one or more other persons any money or property of any nature owned solely or in part by the defendant, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

3.      At the time you were served or any time subsequent, did you hold legal title to any money or property of any nature owned solely or in part by the Defendant or in which Defendant held or claimed any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

4.      At any time you were served or at any subsequent time, did you hold as fiduciary any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, in which the Defendant had any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

5.   At any time before or after you were served did the Defendant transfer or deliver any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to you or to any person or place pursuant to your direction or consent and if so what was the consideration therefor?

6.   At any time after you were served did you pay, transfer or deliver money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to the Defendant or to any person or place pursuant to the defendant's direction or otherwise discharge any claim of the Defendant against you?

7.   If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which funds are deposited electronically on a recurring basis and which are identified as being funds that upon deposit are exempt from execution, levy or attachment under Pennsylvania or federal law?  If so, identify each account and state the amount of funds in each account, and the entity electronically depositing those funds on a recurring basis.

8.   If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which the funds on deposit, not including any otherwise exempt funds, did not exceed the amount of the general monetary exemption under 42 Pa. C.S. §8123?  If so, identify each account.

**DEAN E. WEISGOLD, P.C.**

By: _____

Dean E. Weisgold, Esq.
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGG BOYDEN | : | CIVIL ACTION |
| v. | : | NO.  18-cv-3283 |
| HLS II, LLC | : | |
| and | : | |
| ALICE CUMMINGS | : | |
| | : | |

<u>**INTERROGATORIES IN ATTACHMENT**</u>

TO:    CP Acquisitions 17, LLC
       18 E. Lancaster Avenue
       Wynnewood, PA 19096

       You are required to file answers to the following interrogatories within twenty (20) days after service upon you.  Failure to do so may result in a default judgment being entered against you.

1.     At the time you were served or any at subsequent time, did you owe the defendant any money or were you liable to the defendant on any negotiable or other written instrument, or did the defendant claim that you owed the defendant any money or were liable to the defendant for any reason?

2.     At the time you were served or at any subsequent time, was there in your possession, custody or control or in the joint possession, custody or control of yourself and one or more other persons any money or property of any nature owned solely or in  part by the defendant, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

3.     At the time you were served or any time subsequent, did you hold legal title to any money or property of any nature owned solely or in part by the Defendant or in which Defendant held or claimed any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

4.     At any time you were served or at any subsequent time, did you hold as fiduciary any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, in which the Defendant had any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

5.      At any time before or after you were served did the Defendant transfer or deliver any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to you or to any person or place pursuant to your direction or consent and if so what was the consideration therefor?

6.      At any time after you were served did you pay, transfer or deliver money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to the Defendant or to any person or place pursuant to the defendant's direction or otherwise discharge any claim of the Defendant against you?

7.      If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which funds are deposited electronically on a recurring basis and which are identified as being funds that upon deposit are exempt from execution, levy or attachment under Pennsylvania or federal law?  If so, identify each account and state the amount of funds in each account, and the entity electronically depositing those funds on a recurring basis.

8.      If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which the funds on deposit, not including any otherwise exempt funds, did not exceed the amount of the general monetary exemption under 42 Pa. C.S. §8123?  If so, identify each account.

DEAN E. WEISGOLD, P.C.

By: _____

Dean E. Weisgold, Esq.
Attorney for Plaintiff

EXHIBIT "F"

USM-285 is a 5-part form. Fill out the form and print 5 copies. Sign as needed and route as specified below.

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| | |
|---|---|
| PLAINTIFF<br>GREGG BOYDEN | COURT CASE NUMBER<br>18-CV-3283 |
| DEFENDANT<br>HLS II, LLC | TYPE OF PROCESS |

**SERVE AT**
{ NAME OF INDIVIDUAL, COMPANY, CORPORATION ETC TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
CP Acquisitions 17, LLC
ADDRESS *(Street or RFD, Apartment No , City, State and ZIP Code)*
18 E Lancaster Avenue, Wynnewood, PA 19096

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW

Dean E. Weisgold, Esquire
1835 Market Street, Suite 1215
Philadelphia, PA 19103

| | |
|---|---|
| Number of process to be served with this Form 285 | |
| Number of parties to be served in this case | 1 |
| Check for service on U S A | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service)*

Fold                                                                                     Fold

| Signature of Attorney other Originator requesting service on behalf of | ☒ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br>215-979-7602 | DATE |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process<br>1 | District of Origin<br>No 66 | District to Serve<br>No 66 | Signature of Authorized USMS Deputy or Clerk<br>*Marie Ryall* | Date<br>9-20-19 |
|---|---|---|---|---|---|

I hereby certify and return that I ☒ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation etc, at the address shown above on the on the individual, company, corporation, etc shown at the address inserted below

☐ I hereby certify and return that I am unable to locate the individual, company, corporation etc named above *(See remarks below)*

Name and title of individual served *(if not shown above)*
*Laura Voyer Reg Prop. Manager*

☒ A person of suitable age and discretion then residing in defendant's usual place of abode

Address *(complete only different than shown above)*

| Date<br>11-7-19 | Time<br>1:11 | ☐ am<br>☒ pm |
|---|---|---|

Signature of U S Marshal or Deputy

| Service Fee<br>#165.00 | Total Mileage Charges including *endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U S Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|

REMARKS

**PRINT 5 COPIES:**
1 CLERK OF THE COURT
2 USMS RECORD
3 NOTICE OF SERVICE
4 BILLING STATEMENT* To be returned to the U S Marshal with payment, if any amount is owed Please remit promptly payable to U S Marshal
5 ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev 12/15/80
Automated 01/00

**USM-285 is a 5-part form. Fill out the form and print 5 copies. Sign as needed and route as specified below.**

U.S. Department of Justice
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| GREGG BOYDEN | 18-CV-3283 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| HLS II, LLC | |

**SERVE AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION ETC TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
CP Acquisitions 16, LLC

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
18 E Lancaster Avenue, Wynnewood, PA 19096

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW

Dean E Weisgold, Esquire
1835 Market Street, Suite 1215
Philadelphia, PA 19103

| Number of process to be served with this Form 285 | |
| Number of parties to be served in this case | 1 |
| Check for service on U S A | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

Fold                                                                                               Fold

Signature of Attorney other Originator requesting service on behalf of   ☒ PLAINTIFF   ☐ DEFENDANT   TELEPHONE NUMBER 215-979-7602   DATE

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated (Sign only for USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 | No 0b0 | No 0b0 | Marie Ryall | 9-20-19 |

I hereby certify and return that I ☒ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc, at the address shown above on the on the individual, company, corporation, etc shown at the address inserted below

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc named above (See remarks below)

Name and title of individual served (if not shown above)
Laura Voyer (Leg Oper Manager)

☒ A person of suitable age and discretion then residing in defendant's usual place of abode

Address (complete only different than shown above)

| Date | Time | |
|---|---|---|
| 11-7-19 | 1/11 | ☐ am ☒ pm |

Signature of U S Marshal or Deputy

| Service Fee | Total Mileage Charges including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U S Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|
| | | | | | |

REMARKS

**PRINT 5 COPIES:**
1 CLERK OF THE COURT
2 USMS RECORD
3 NOTICE OF SERVICE
4 BILLING STATEMENT* To be returned to the U S Marshal with payment, if any amount is owed Please remit promptly payable to U S Marshal
5 ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev 12/15/80
Automated 01/00

USM-285 is a 5-part form. Fill out the form and print 5 copies. Sign as needed and route as specified below.

**U.S. Department of Justice**
United States Marshals Service

**PROCESS RECEIPT AND RETURN**
See "Instructions for Service of Process by U.S. Marshal"

| | |
|---|---|
| PLAINTIFF<br>GREGG BOYDEN | COURT CASE NUMBER<br>18-CV-3283 |
| DEFENDANT<br>HLS II, LLC | TYPE OF PROCESS |

**SERVE AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION ETC TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
Cross Properties Realty, LLC

ADDRESS (Street or RFD, Apartment No , City, State and ZIP Code)
18 E. Lancaster Avenue, Wynnewood, PA 19096

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW

Dean E Weisgold, Esquire
1835 Market Street, Suite 1215
Philadelphia, PA 19103

| | |
|---|---|
| Number of process to be served with this Form 285 | |
| Number of parties to be served in this case | 1 |
| Check for service on U S A | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):

Fold                                                                 Fold

Signature of Attorney other Originator requesting service on behalf of   ☒ PLAINTIFF   ☐ DEFENDANT

TELEPHONE NUMBER
215-979-7602

DATE

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE**

I acknowledge receipt for the total number of process indicated (Sign only for USM 285 if more than one USM 285 is submitted)

| Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|
| 1 | No 06 | No 06 | Marie Ryall | 9-20-19 |

I hereby certify and return that I ☑ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc , at the address shown above on the on the individual , company, corporation, etc shown at the address inserted below

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc named above (See remarks below)

Name and title of individual served (if not shown above)
Laura Veyer   Reg Prop Manager

☑ A person of suitable age and discretion then residing in defendant's usual place of abode

Address (complete only different than shown above)

| Date | Time | |
|---|---|---|
| 11-7-19 | 1:11 | ☐ am ☐ pm |

Signature of U S Marshal or Deputy

| Service Fee | Total Mileage Charges including endeavors | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U S Marshal* or (Amount of Refund*) |
|---|---|---|---|---|---|
| | | | | | |

REMARKS

PRINT 5 COPIES!
1 CLERK OF THE COURT
2 USMS RECORD
3 NOTICE OF SERVICE
4 BILLING STATEMENT* To be returned to the U S Marshal with payment, if any amount is owed Please remit promptly payable to U S Marshal
5 ACKNOWLEDGMENT OF RECEIPT

PRIOR EDITIONS MAY BE USED

Form USM-285
Rev 12/15/80
Automated 01/00