**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| GREGG BOYDEN, <br><br> Plaintiff, <br><br> v. <br><br> HLS II, LLC. <br><br> Defendant. | : <br> : <br> : <br> : CIVIL ACTION NO. <br> : 18-cv-3283-TJS <br> : <br> : <br> : <br> : <br> : |

**PURPORTED GARNISHEES CROSS PROPERTIES REALTY, LLC, CP ACQUISITIONS 16, LLC, AND CP ACQUISITIONS 17, LLC ANSWER IN OPPOSITION TO PLAINTIFF GREGG BOYDEN'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Purported Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LLC, and CP Acquisitions 17, LLC (collectively "Cross Properties"), by and through counsel, Dilworth Paxson LLP, file this Answer in Opposition to the Motion for Summary Judgment filed by Plaintiff Gregg Boyden ("Boyden"). Cross Properties are three related entities that entered into a real estate transaction with Defendant HSL II, LLC ("HSL"). HSL breached the Real Estate Purchase and Sale Agreement (the "Agreement") between the parties, and Cross Properties kept HSL's non-refundable deposit, as was its right under the Agreement. *See* the Real Estate and Purchase Sale Agreement, attached as Exhibit C of Plaintiff's Motion for Default Judgment at ¶¶ 3.1(b) and 13.1 (providing that Cross Properties has the right to keep any deposits in the event HSL breaches or fails to hit certain payment benchmarks, both which occurred in this instance). The facts of HSL's breach and the rights of the parties under the Agreement are laid out more fully in Cross Properties' Answers to Interrogatories in Attachment. A true and accurate copy of

Cross Properties' Answers in Interrogatories in Attachment, which have now been provided to the Plaintiff, are attached hereto as Exhibit A.

Therefore, Cross Properties is not in possession of any money or property belonging to the Defendant, and the Plaintiff's Motion for Default Judgment should be denied.

Respectfully submitted,
DILWORTH PAXSON LLP

Dated: March 10, 2020

/s/ *Taylor P. Festa*
Taylor P. Festa, Esq.
PA Atty. I.D. No. 325670
David A. Rodkey, Esq.
PA Atty. I.D. No. 325698
1500 Market Street, Suite 3500E
Philadelphia, PA  19102-2101
(215) 575-7125
tfesta@dilworthlaw.com
drodkey@dilworthlaw.com
*Attorneys for Purported Garnishees*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGG BOYDEN, Plaintiff, v. HLS II, LLC. Defendant. | CIVIL ACTION NO. 18-cv-3283-TJS |

**PURPORTED GARNISHEES CROSS PROPERTIES REALTY, LLC, CP ACQUISITIONS 16, LLC, AND CP ACQUISITIONS 17, LLC CERTIFICATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

I, David Blumenfeld, the President of Cross Properties Realty, LLC, CP Acquisitions 16, LLC, and CP Acquisitions 17, LLC, (collectively "Cross Properties" or "Purported Garnishees"), through undersigned counsel, hereby Answer the Certification of Dean E. Weisgold, Esquire, and aver as follows:

1. Purported Garnishees have no basis in knowledge to confirm or deny Dean E. Weisgold's status as an attorney or his familiarity with the above-captioned matter.

2. Exhibit "A" of counsel's certification is a writing that speaks for itself.

3. Exhibit "B" of counsel's certification is a writing that speaks for itself.

4. Admitted.

5. Admitted in part and denied in part. It is admitted that HLS II, LLC made a payment on December 14, 2017 to the Purported Garnishees and that payment was for $100,000. It is also admitted that HLS II, LLC made an additional deposit of $75,000 and that that deposit was made to the First American Title Insurance Company ("First American"). It is denied that these payments were "good faith" deposits, or that the Defendant is entitled to a refund of these

payments. In fact, as laid out more fully in Cross Properties' Answers to Interrogatories in Attachment, the payments were non-refundable deposits,. A true and accurate copy of Cross Properties' Answers in Interrogatories in Attachment are attached hereto as Exhibit A.

6. Admitted. By way of further response, the transaction fell through because of HSL II's failure to perform its obligations under the Real Estate Purchase and Sale Agreement (the "Agreement"). *See* the Real Estate and Purchase Sale Agreement, attached as Exhibit C of Plaintiff's Motion for Default Judgment.

7. Denied. Plaintiff's counsel has this absolutely wrong. In fact, it was the buyer, HSL II, that, *inter alia*, failed to make timely payments as specified under ¶ 3.1(b) of the Agreement, ultimately causing the deal to fall apart.

8. Admitted. By way of further response, the money being held in escrow by First American belongs exclusively to Cross Properties, and the Defendant has no valid claim to those funds.

9. Admitted.

10. Admitted. By way of further response, Purported Garnishees were unaware of the seriousness of or the necessity to answer the Interrogatories in Attachment. Purported Garnishees interactions with defendant have been nothing but unpleasant, as the Purported Garnishees ultimately lost approximately one million dollars as a result of taking the real property subject to the Agreement off the market during the pendency of the failed transaction with HSL II. Cross Properties thought the Interrogatories in this matter was just another attempt by the defendant to attempt to harass Cross Properties into paying money to which HSL II has no rightful claim.

11. Purported Garnishees have no personal knowledge of the docket in this case.

12. Denied as a legal conclusion and denied as stated. The Federal Rules of Civil Procedure do not "require" the Court to enter a Default Judgment. In fact, to do so in this case would be a grave injustice because the money that the Plaintiff is seeking does not belong to the Defendant.

13. Purported Garnishees have no personal knowledge of the docket in this case. It is admitted that the Purported Garnishees have never requested an extension of time from this Court.

14. The aversion of Plaintiff's counsel in paragraph 14 is a legal conclusion that requires no response.

WHEREFORE, Purported Garnishees respectfully request that the Plaintiff's Motion for Default Judgment be denied.

Respectfully submitted,
DILWORTH PAXSON LLP

Dated: March 10, 2020      /s/ *Taylor P. Festa*
Taylor P. Festa, Esq.
PA Atty. I.D. No. 325670
David A. Rodkey, Esq.
PA Atty. I.D. No. 325698
1500 Market Street, Suite 3500E
Philadelphia, PA  19102-2101
(215) 575-7125
tfesta@dilworthlaw.com
drodkey@dilworthlaw.com
*Attorneys for Purported Garnishees*

## VERIFICATION

I, David Blumenfeld, President of Cross Properties, verify that the statements made in the foregoing Answer in Opposition to the Plaintiff's Motion for Default Judgment are true and correct to the best of my knowledge, information, and belief. I understand that false statements made are subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

Dated: 3-10-20

David Blumenfeld

## **CERTIFICATE OF SERVICE**

I, Taylor P. Festa, Esquire, do hereby certify that a true and correct copy of the Answer in Opposition to the Plaintiff's Motion for Default Judgment was served via ECF upon the following counsel of record on March 10, 2020:

> Dean E. Weisgold, Esq.
> 1835 Market Street, Suite 1215
> Philadelphia, Pennsylvania 19103
> dean@weisgoldlaw.com
>
> Steven H. Doto, Esq.
> Lauletta Birnbaum, LLC
> 591 Mantua Blvd.
> Suite 200
> Sewell, NJ 08080
>
> Helen Hayden, VP, Senior Operations Manager
> First American Title Co.
> 1 First American Way
> Santa Ana, CA 92707
> (via email hhayden@firstam.com)

                                                                       /s/ Taylor P. Festa
                                                                       Taylor P. Festa, Esq.

Dated: March 10, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                        |   |                        |
|------------------------|---|------------------------|
| GREGG BOYDEN           | : |                        |
|                        | : |                        |
| Plaintiff,             | : |                        |
|                        | : | CIVIL ACTION           |
| v.                     | : | NO. 18-cv-3283-TJS     |
|                        | : |                        |
| HLS II, LLC.           | : |                        |
|                        | : |                        |
| Defendant.             | : |                        |
|                        | : |                        |

### **ORDER**

AND NOW, this _____ day of _____ 2020, upon consideration of Motion of Plaintiff Gregg Borden for the entry of a default judgment against Purported Garnishees Cross Properties Realty, LLC, CP Acquisitions 16, LLC, and CP Acquisitions 17, LLC, and the response thereto by the Purported Garnishees, it is ORDERED that the motion is DENIED.

BY THE COURT:

_____
                                    J.

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGG BOYDEN | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : NO. 18-cv-3283-TJS |
| | : |
| HLS II, LLC. | : |
| | : |
| Defendant. | : |
| | : |

**CROSS PROPERTIES REALTY, LLC, CP ACQUISITIONS 16, LLC, AND CP ACQUISITIONS 17, LLC ANSWERS**
**TO INTERROGATORIES IN ATTACHMENT**

1. At the time you were served or at any subsequent time, did you owe the defendant any money or were you liable to the defendant on any negotiable or other written instrument, or did the defendant claim that you owed the defendant any money or were liable to the defendant for any reason?

Cross Properties Realty, LLC, CP Acquisitions 16, LLC, and CP Acquisitions 17, LLC do not owe the defendant, HLS II, LLC ("HSL" or "defendant"), any money and are not liable to the defendant in any way. In November 2017, the defendant entered into a Real Estate Purchase Sale Agreement with CP Acquisitions 16, LLC and CP Acquisitions 17, LLC, both of which are entities related to Cross Properties Realty, LLC. For the sake of convenience, all three entities collectively will hereinafter be referred to as "Cross Properties." HLS has previously taken the position that Cross Properties owes the defendant money as a result of a failed real estate transaction. However, the money over which the defendant previously made a claim was a non-refundable deposit, as it well understood, and HLS has no right to or valid claim over those funds. A true and accurate copy of the Real Estate Purchase And Sale Agreement (the "Agreement") between Cross Properties and the defendant is attached hereto as Exhibit A.

By way of further response, HLS, the buyer in the real estate transaction set forth in the Agreement, made two separate deposits to Cross Properties – a cash deposit of $100,000 to Cross Properties directly in December of 2017 and an additional $75,0000 deposit to First American Title Insurance Company approximately two months thereafter. Under the Agreement, if HLS defaults, the "Seller may, as its sole and exclusive remedy, terminate [the] Contract by written notice to Buyer and Escrow Agent and receive the Deposit as liquidated damages." Exhibit A at ¶ 13.1. Pursuant to Section 3.1(a) of the Agreement, HLS had to make a deposit of $100,000 dollars by December 8, 2017 or Cross Properties would have the right to terminate. HLS made the deposit of $100,000 on December 15, which Cross Properties accepted, choosing not to exercise its right to terminate at that point.

HLS then delayed the process substantially by not providing the additional deposit at the end of the Inspection Period, as was required under the Agreement. Section 3.1(b) states that

> within one (1) Business Day following the expiration of the Inspection Period, Buyer shall deposit an additional One Hundred Fifty Thousand . . . with the Title Company. If Buyer fails to timely deposit the Additional Deposit with the Title Company, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this Contract by written notice to Buyer at any time before the Additional Deposit is delivered to the Title Company, in which event, **the Initial Deposit shall be released to Seller** . . .

Agreement at ¶ 3.1(b) (emphasis added). The Inspection Period is defined as thirty (30) days following the Effective Date. Agreement at ¶ 4.1. The "Effective Date" is the "latter of the date on which this Agreement is executed by Seller or Buyer, as indicated by either signatures or initials, which latter date shall be the date of final execution and agreement by the parties hereto." Agreement at ¶ 15.8. HLS and Cross Properties executed the agreement on November 27, 2017.  Therefore, Cross Properties was entitled to terminate the agreement thirty (30) days following the Effective Date, or December 27, 2017, and if HLS had not yet deposited the

amount required under the Agreement, Cross Properties had the right to terminate the contract and keep the deposit.

Approximately two months after making its initial $100,000 deposit, HLS deposited another $75,000 with the title company. This brought HLS's total deposited amount to one hundred seventy five thousand dollars ($175,000). However, that amount is below the two hundred fifty thousand ($250,000) (the initial deposit plus the deposit following the Inspection Period) that was required to have been deposited by the end of the Inspection Period. Cross Properties allowed HLS some latitude to deposit the required amount, and when it became clear that HLS could not hold up its end of the bargain, Cross Properties exercised its right to terminate, as is its right under the Agreement. Section 3.1.(b) and Section 13.1 both make it clear that if HLS fails to make timely payments or otherwise breaches and Cross Properties exercises its right to terminate, Cross Properties is entitled to keep the amount that HLS has already deposited. Therefore, HLS has absolutely no right whatsoever to the money that it has paid to Cross Properties.

By way of further response, Cross Properties took the real property that was the subject of the Agreement off the market during the pendency of the failed transaction with HLS. The delay caused by HLS's failure to perform under the Agreement caused Cross Properties to miss out on the operative time in which to sell the property, causing approximately one million dollars in damages to Cross Properties. The sale price of the real property that was subject of the Agreement was twenty eight million dollars ($28,000,000).

This Answer to Interrogatory #1 is not meant to provide an exhaustive list of reasons why Cross Properties is entitled to keep HLS's deposit. Cross Properties reserves the right to supplement its explanation at any time.

2. At the time you were served or at any subsequent time, was there in your possession, custody or control or in the joint possession, custody or control of yourself and one or more other persons any money or property of any nature owned solely or in part by the defendant, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

No. Cross Properties has no money or property that belongs wholly or in part to the defendant. The response to interrogatory #1 is incorporated herein by reference, and for the reasons stated in interrogatory #1, although the defendant has deposited $75,000 in escrow, that money does not belong to the defendant.

3. At the time you were served or any time subsequent, did you hold legal title to any money or property of any nature owned solely or in part by the Defendant or in which Defendant held or claimed any interest, inducing, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

No. Answers to interrogatory #1 and #2 are incorporated herein by reference.

4. At any time you were served or at any subsequent time, did you hold as fiduciary any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, in which the Defendant had any interest, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA?

No.

5. At any time before or after you were served did the Defendant transfer or deliver any money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to you or to any person or place pursuant to your direction or consent and if so what was the consideration therefor?

Yes, the defendant made the two payments that are fully described in the response to interrogatory #1. Those are the only transactions that the defendant has made with Cross Properties.

6. At any time after you were served did you pay, transfer or deliver money or property, including, but not limited to, any deposit or escrow associated with the sale of 3608-12 'Spring Garden Street, Philadelphia, PA and 4027 Baring Street, Philadelphia, PA, to the Defendant or to any person or place pursuant to the defendant's direction or otherwise discharge any claim of the Defendant against you?

No. As described more fully in the response to interrogatory #1, the defendant has no valid claims over the payments it made to Cross Properties. Those funds were never transferred back to the defendant. Cross Properties spent the $100,000 deposit well before ever having been served with these interrogatories, and that total amount pales in comparison to the loss it suffered as a result of taking the properties subject to the Agreement off the market while the transaction with the defendant was pending. The $75,000 payment from the defendant is still being held in escrow.

7. If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which funds are deposited electronically on a recurring basis and which are identified as being funds that upon deposit are exempt from execution, levy or attachment under Pennsylvania or federal law? If so, identify each account and state the amount of funds in each account, and the entity electronically depositing those funds on a recurring basis.

Not applicable.

8. If you are a bank or other financial institution, at the time you were served or at any subsequent time did the defendant have funds on deposit in an account in which the funds on deposit, not including any otherwise exempt funds, did not exceed the amount of the general monetary exemption under 42 Pa. C.S. §8123? If so, identify each account.

Not applicable.

Respectfully submitted,
DILWORTH PAXSON LLP

Dated: March 10, 2020

/s/ *Taylor P. Festa*
Taylor P. Festa, Esq.
PA Atty. I.D. No. 325670
David A. Rodkey, Esq.
PA Atty. I.D. No. 325698
1500 Market Street, Suite 3500E
Philadelphia, PA  19102-2101
(215) 575-7125
tfesta@dilworthlaw.com
drodkey@dilworthlaw.com
*Attorneys for Purported Garnishees*

## VERIFICATION

I, David Blumenfeld, President of Cross Properties, verify that the statements made in the foregoing Answers to Interrogatories in Attachment are true and correct to the best of my knowledge, information, and belief. I understand that false statements made are subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

Dated: 3-10-20

David Blumenfeld